# EXHIBIT 2

CAUSE NO. 2012-27788

| | | |
|---|---|---|
| CARLTON ENERGY GROUP L.L.C. | § | IN THE DISTRICT COURT OF |
|     Plaintiff, | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| CLIVEDEN PETROLEUM | § | |
| COMPANY   LIMITED and | § | |
| CLIVEDEN PETROLEUM SA | § | |
|     Defendants. | § | 55TH JUDICIAL DISTRICT |

## PLEADING INDEX

| | | Date |
|---|---|---|
| 1. | Plaintiff's Original Petition | 05/11/12 |
| 2. | Plaintiff's First Amended Petition to Enforce the Binding Arbitration Clause | 09/10/12 |
| 3. | Plaintiff's Verified Motion to Retain | 09/12/12 |
| 4. | Defendant Cliveden Petroleum S.A.'s Special Appearance and Original Answer | 12/10/12 |

274089v.1 C559/00002

Filed 12 May 11 P2:46
Chris Daniel - District Clerk
Harris County
ED101J016875627
By: Nelson Cuero

| 2012-27788 / Court: 055 |
| --- |

CAUSE NO.: _____

| | | |
| --- | --- | --- |
| CARLTON ENERGY GROUP, L.L.C. | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| CLIVEDEN PETROLEUM COMPANY | § | |
| LIMITED | § | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION TO ENFORCE
## THE BINDING ARBITRATION CLAUSE

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, CARLTON ENERGY GROUP, L.L.C., PLAINTIFF herein, and files this PLAINTIFF'S ORIGINAL PETITION TO ENFORCE THE BINDING ARBITRATION CLAUSE, complaining of and against CLIVEDEN PETROLEUM COMPANY LIMITED, DEFENDANT herein, and, in support thereof, would respectfully show this Honorable Court the following:

### I. DISCOVERY-CONTROL PLAN

1.      Plaintiff intends that this case be conducted pursuant to a Level 3 Discovery-Control Plan in accordance with Texas Rule of Civil Procedure 190.4.

### II. PARTIES AND SERVICE INFORMATION

2.      Defendant Cliveden Petroleum Company Limited, an agency or instrumentality of the foreign state of Switzerland, has no registered service agent in the State of Texas or the United States.  The Country of Switzerland is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.  Accordingly, Plaintiff will serve Defendant with the appropriate summons in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. Defendant will be served at its Switzerland address of:

---

Cliveden Petroleum Company Limited
Chemin Du Velours 24
1231 Conches
Switzerland

### III. JURISDICTION AND VENUE

3.      This Court has personal jurisdiction over Defendant as it purposely availed itself to the State of Texas' jurisdiction, Defendant had sufficient minimum contacts with the State of Texas and its residents to warrant being subject to this State's jurisdiction, and to exercise personal jurisdiction over Defendant and require it to defend a suit in the State of Texas would not insult the traditional notions of fair play and substantial justice.

4.      This Court has subject matter jurisdiction over this matter as the amount in controversy is in excess of its minimum jurisdictional limits.

5.      Venue is proper in Harris County, Texas as the events or omissions at issue in this lawsuit occurred in whole, or in substantial part, in Harris County, Texas.  Tex. Civ. Prac. & Rem. Code § 15.002(a)(1) (West 2010).

### IV. INTRODUCTION

6.      This lawsuit involves a dispute between Plaintiff and Defendant stemming from Defendant's breach of an "Assignment Agreement" entered into by Tom O'Dell in his capacity as Chairman and Managing Director of Carlton Energy Group, L.L.C. and Paul E. Vickory in his capacity as President of Cliveden Petroleum Company Limited.

### V. EVIDENCE RELIED UPON

7.      Plaintiff incorporates the following by reference as if fully set out herein:

Exhibit A      The "Assignment Agreement" between Plaintiff and Defendant.

## VI. FACTS

8.      Plaintiff signed the Assignment Agreement in his capacity as Chairman and Managing Director of Carlton Energy Group, L.L.C. (Exhibit A, page 5). Paul E. Vickroy, signed the Assignment Agreement in his capacity as President of Cliveden Petroleum Company Limited. (Exhibit A, page 5). The Assignment Agreement was entered into on March 31, 2000. (Exhibit A, page 5).

9.      The Assignment Agreement reads in relevant part:

> …in the event of any dispute between the parties whatsoever arising under this Agreement, the parties agree to submit such dispute to binding arbitration to be held in Harris County, Texas.

(Exhibit A, page 3, clause (4)(b)).

10.     Defendant's actions amounted to a breach of the Assignment Agreement contract, and are, thus, within the scope of the arbitration agreement at issue.

## VII. ARGUMENTS

11.     A written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that arises between the parties after the date of the agreement. Tex. Civ. Prac. & Rem. Code § 171.001(a)(2). The law is abundantly clear in this instance. There was a binding arbitration clause in the Assignment Agreement when the parties signed the agreement, Defendant breached the Assignment Agreement after it was executed, thus, the arbitration clause should be given credence and govern the pursuit of these matters against Defendant.

12.     The causes of action between Plaintiff and Defendant should be compelled to binding arbitration. It is unambiguous that the parties herein contracted and agreed that "any dispute between parties whatsoever arising under this Agreement" be submitted to "binding arbitration."

13.    "Arbitration of disputes is strongly favored under federal and state law.  Accordingly, a presumption exists against the waiver of a contractual right to arbitration.  *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 898-99 (Tex.1995).

14.    "Any Doubts regarding the scope of arbitration agreement[s] are resolved in favor of arbitration…Because the courts favor arbitration awards as a means of disposing of disputes, the courts indulge every reasonable presumption in favor of upholding the awards." *Koch v. Koch*, 27 S.W.3d 93, 96 (Tex.App.—San Antonio 2000, no pet.).

15.    In determining whether a claim falls within the scope of an arbitration agreement, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is **not** susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)(emphasis added).  The U.S. Supreme Court and the Fifth Circuit have characterized arbitration provisions with language similar to the one in this case as "broad arbitration clauses capable of expansive reach." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)(stating that "any dispute, controversy or claim arising out of or in relation to or in connection with this Agreement" is a broad arbitration clause that "embraces all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute."); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397-98 (1967)(labeling as "broad" a clause requiring arbitration of "any controversy or claim arising out of or relating to this Agreement.").

16.    Defendant's actions amounted to a breach of the Assignment Agreement, thereby triggering the arbitration clause fully contained therein.  Undeniably, there is a valid and enforceable agreement to arbitrate between Plaintiff and Defendant.  The claims Plaintiff levy

against Defendant arise out of the Assignment Agreement.   Therefore, the arbitration clause, Texas statutes, Texas case law and federal case law all mandate that Plaintiff and Defendant arbitrate these matters.   Plaintiff merely asks that the Court honor the valid agreement to which the parties mindfully entered.

## VIII. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that the Defendant answer herein, and that the Honorable Court compel the parties herein to binding arbitration.


Respectfully submitted,

GALOW & SMITH, P.C.
1204 Nueces Street
Austin, Texas 78701
(512) 481-0200
(512) 481-0250 Telefax

By:  _____
    **JERRY GALOW**
    State Bar No. 07594400
    Jerry@Galowlaw.com
    **ATTORNEY FOR PLAINTIFF**
    **CARLTON ENERGY GROUP, L.L.C.**

05/18/2010 16:11 7139329561    PAGE 03/07

03/31/2000 16:19 7136685237    FROM CARLTON/ENERGY/GROUP +1 713 932 9561    PAGE P.02
3-31-200 4:19PM

2012-27788 / Court: 055

# CLIVEDEN PETROLEUM CO. LTD.

## ASSIGNMENT AGREEMENT

This Assignment Agreement ("Agreement") is made and entered into effective as of February 15, 2000 ("Effective Date") by and between Carlton Energy Group, LLC, a Texas limited liability company ("Assignor") and Cliveden Petroleum Co. Ltd., a British Virgin Islands corporation ("Assignee").

**RECITALS.**

A.  Assignor owns and holds an undivided ten percent (10%) working interest together with all rights pertaining thereto (the "Interest") in and under that certain Convention established between and among the Republic of Chad ("Chad"), Trinity Energy Resources, Inc., a Nevada corporation ("Trinity"), Oriental Energy Resources, Ltd., a *Nigerian* corporation ("Oriental"), and Assignor, dated April 7, 1999, together with exploration Permit "H" issued by the government of Chad (collectively, the "Convention"), covering exploration and development in three (3) areas of northern, central, and southern regions of Chad covering approximately one hundred eight million (108,000,000) acres (the "Area").

B.  Assignor desires to assign, and Assignee desires to acquire, the Interest in consideration and exchange for an undivided ten percent (10%) net profits interest in Assignee (the "Assignee Interest").

**AGREEMENT.**

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Assignor and Assignee hereby agree as follows:

(1)  *Assignment of Interest.* For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor agrees to assign, and does hereby transfer and assign to Assignee or its nominee, subject to any requisite approval of the Minister of Mines and Energy of Chad ("Minister"), all of the rights and interest of Assignor in and to the Interest and the Convention. Assignor shall execute and deliver to Assignee a separate Assignment for acceptance by Assignee and approval by the Minister, in substantially the form attached hereto as Exhibit A hereof (the "Assignment").

(2)  *Grant of Assignee Interest.* In consideration of the Assignment and this Agreement, Assignee hereby grants to Assignor a carried, undivided ten percent (10%) interest in distributable net profits (as hereinafter defined) of



EXHIBIT
A

Cliveden Petroleum Co. Ltd.
Assignment Agreement
Page 2

Assignee.  An amount equal to ten percent (10%) of the distributable net profits of Assignee, determined on a quarterly basis during each calendar year, shall be paid and distributed to Assignor by Assignee within forty-five (45) days after the end of each calendar quarter, accompanied by a statement of distributable net profits prepared by or under the direction of management of Assignee setting forth the computation and determination of distributable net profits of Assignee for the previous calendar quarter. As used herein, the term distributable net profits means the net income of Assignee from earnings and receipts from operations, fees, and disposition of assets, including without limitation, royalties and bonuses, before income taxes, interest on indebtedness, depreciation, amortization, less all costs and expenses of operations, administration, sales, severance, and production taxes, and similar burdens, and all costs hereto or hereinafter incurred by Assignee, including third-party costs with respect to the Convention and other properties, and all investment, exploitation costs and expenditures, whether capitalized or expensed for bookkeeping and accounting purposes, determined on a cash basis, and otherwise in accordance with generally accepted accounting standards consistently applied.

*(excluding salaries of directors, principals or interest owners)*

*Alo PV*

(3)   *Assignor Fee.*  Assignee shall assume payment of a fee to Assignor in the amount of five hundred thousand dollars ($500,000), representing payments owed to Assignor by third parties for the efforts of Assignor in identifying, evaluating, structuring, and negotiating the Convention, which obligation has been assumed by Assignee (the "Fee"); provided, however, that the amount of the Fee shall be payable only out of and to the extent that Assignee shall receive net royalties, fees, bonuses, or other payments associated with a farmout or assignment of any interests owned by Assignee with respect to the Convention, after recoupment by Assignee of all of its investment, costs, and expenses, whether or not capitalized, incurred in connection with the Convention, including third-party costs, fees, commissions, travel expenses, prospect, seismic, engineering, and other "sunk" costs, together with recovery and recoupment of any and all expenditures assumed or incurred by Assignee in connection with and as described in that certain Agreement dated December 27, 1999 between Trinity Energy Resources, Inc. and Assignee.

(4)   *Administrative Offices.*  Effective March 1, 2000, Assignor shall provide and Assignee will be permitted, to occupy and utilize a portion of the offices of Assignor located at 952 Echo Lane, Suite #210, Houston, Texas 77024 for the Houston headquarters of Assignee and to support the technical and commercial work that is being undertaken by Assignee and its consultants.

*Alo PV*

Cliveden Petroleum Co. Ltd.
Assignment Agreement
Page 3

For this support and use of office space, Assignee will pay Assignor a fee of ten thousand dollars ($10,000) per month payable in advance on the 1st day of each month beginning March 1, 2000. *Assignor will be reimbursed reasonable ~~direct~~ out of pocket costs expended on behalf of ~~Cliveden~~ Assignee by Assignor.*

(4)     *General Provisions.*

(a)     This Agreement shall be construed in accordance with, and governed by, the laws of the State of Texas, without giving effect to the conflict of laws provisions thereof. The venue of any legal proceedings whatsoever related to any dispute under this Agreement shall be in the state or federal courts, as the case may be, of Harris County, Texas.

(b)     Notwithstanding anything to the contrary contained in this Agreement, in the event of any dispute between the parties whatsoever arising under this Agreement, the parties agree to submit such dispute to binding arbitration, to be held in Harris County, Texas. The parties shall seek to agree upon a single arbitrator, failing which each party to the dispute shall appoint an arbitrator, who shall be a licensed attorney or licensed arbitrator acting independently and not as an advocate or representative of any party, and the two (2) arbitrators so appointed shall select a third arbitrator. The arbitrators shall meet, review all facts and circumstances related to the dispute, and tender their decision as soon as reasonably possible, utilizing the Rules of Arbitration of the American Arbitration Association as to procedure but not as to fees. The final decision shall require the agreement of a majority of the arbitrators, and shall be fully binding and enforceable on the parties in any court of competent jurisdiction, and shall not be appealed to any court of law of any jurisdiction. The costs of the arbitration shall be borne by the parties in such manner as determined by the arbitrators.

(c)     The parties shall hold one another harmless from and against any and all liabilities associated with or related to claims or lawsuits against a party arising out of facts or circumstances occurring prior to the effective date of this Agreement.

(d)     This Agreement shall be held strictly confidential and the terms thereof shall not be disclosed to any individual or entity, other than a party's employees, attorneys, accountants, or consultants, without the prior written consent of both parties hereto. No press releases or

Cliveden Petroleum Co. Ltd.
Assignment Agreement
Page 4

other statements for publication shall be made without the prior written consent of both parties hereto.

(e) The relationship of the parties under this Agreement, including all activities related to the execution, administration, and performance of this Agreement, is that of independent principals and not of a partnership or joint venture between the parties or the designated representatives of the parties in any manner whatsoever. Nothing contained in this Agreement is intended or shall be construed as creating or giving rise to any relationship between the parties, or the designated representatives of the parties, of partnership, employer/employee, principal/agent, or otherwise.

(f) This Agreement and the Assignment reflect the entire agreement of the parties and all parties hereto stipulate that no other representations or agreements have been made, and any representations that may be made in the future will have no effect whatsoever unless made in writing and incorporated into this Agreement through formal amendment.

(g) This Agreement shall not be changed, modified, or amended in any way except in writing, and signed by the authorized representatives of each of the parties hereto.

(h) In the event any provision of this Agreement shall be determined to be invalid or non-binding for any reason whatsoever, the remainder of this Agreement shall continue to be valid and in effect and shall be fully binding on the parties.

(i) This Agreement shall be binding upon and shall inure to the benefit of all parties, their successors, and assigns, except that Assignor shall not be entitled to assign or transfer the Assignee Interest, without the prior written consent of Assignee.

(j) The paragraph headings in this Agreement are inserted for convenience only and shall not control or affect the meaning or construction of any portion of this Agreement.

(k) In the event of a dispute, this Agreement shall be construed neither in favor of nor against the party that drafted this Agreement.

Cliveden Petroleum Co. Ltd.
Assignment Agreement
Page 5

This Agreement may be executed by counterpart signatures and any such counterpart execution, including facsimile execution, shall be valid and fully binding on all parties, as well as their successors and assigns.

AGREED AND EXECUTED THIS 31st DAY OF MARCH, 2000.

CARLTON ENERGY GROUP, L.L.C.        CLIVEDEN PETROLEUM CO. LTD.

BY: _____        BY: _____
    T. C. O'Dell,                      Paul E. Vickroy,
    Chairman and Managing Director     President

## CIVIL CASE INFORMATION SHEET

Filed 12 May 11 P2:46
Chris Daniel - District Clerk
Harris County
ED101J016875627
By: Nelson Cuero

CAUSE NUMBER *(FOR CLERK USE ONLY):* **2012-27788 / Court: 055**

STYLED **CARLTON ENERGY GROUP, L.L.C. V. CLIVEDEN ENERGY GROUP LIMITED**
(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing. This sheet, approved by the Texas Judicial Council, is intended to collect information that will be used for statistical purposes only. It neither replaces nor supplements the filings or service of pleading or other documents as required by law or rule. The sheet does not constitute a discovery request, response, or supplementation, and it is not admissible at trial.

| 1. Contact information for person completing case information sheet: | | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|---|
| Name:<br>Jerry Galow<br><br>Address:<br>1204 Nueces Street<br><br>City/State/Zip:<br>Austin, Texas, 78701<br><br>Signature:<br>/s/ | Email:<br>jolynn@galowlaw.com<br><br>Telephone:<br>(512) 481-0200<br><br>Fax:<br>(512) 481-0250<br><br>State Bar No:<br>07594400 | Plaintiff(s)/Petitioner(s):<br><br>Carlton Energy Group, L.L.C.<br>___<br>___<br><br>Defendant(s)/Respondent(s):<br><br>Cliveden Petroleum Company Limited<br>___<br>___<br>[Attach additional page as necessary to list all parties] | ☒ Attorney for Plaintiff/Petitioner<br>☒ Pro Se Plaintiff/Petitioner<br>☐ Title IV-D Agency<br>☒ Other: ___<br><br>Additional Parties in Child Support Case:<br><br>Custodial Parent:<br><br>Non-Custodial Parent:<br><br>Presumed Father: |

### 2. Indicate case type, or identify the most important issue in the case (select only 1):

**Civil**

**Contract**

*Debt/Contract*
- ☒ Consumer/DTPA
- ☒ Debt/Contract
- ☒ Fraud/Misrepresentation
- ☒ Other Debt/Contract:

*Foreclosure*
- ☒ Home Equity—Expedited
- ☒ Other Foreclosure
- ☒ Franchise
- ☒ Insurance
- ☒ Landlord/Tenant
- ☒ Non-Competition
- ☒ Partnership
- ☒ Other Contract:
  Compel to Arbitration

**Injury or Damage**
- ☒ Assault/Battery
- ☒ Construction
- ☒ Defamation
*Malpractice*
- ☒ Accounting
- ☒ Legal
- ☒ Medical
- ☒ Other Professional Liability:
- ☒ Motor Vehicle Accident
- ☒ Premises
*Product Liability*
- ☒ Asbestos/Silica
- ☒ Other Product Liability List Product:
- ☒ Other Injury or Damage:

**Real Property**
- ☒ Eminent Domain/ Condemnation
- ☒ Partition
- ☒ Quiet Title
- ☒ Trespass to Try Title
- ☒ Other Property:

**Related to Criminal Matters**
- ☒ Expunction
- ☒ Judgment Nisi
- ☒ Non-Disclosure
- ☒ Seizure/Forfeiture
- ☒ Writ of Habeas Corpus— Pre-indictment
- ☒ Other:

**Employment**
- ☒ Discrimination
- ☒ Retaliation
- ☒ Termination
- ☒ Workers' Compensation
- ☒ Other Employment:

**Other Civil**
- ☒ Administrative Appeal
- ☒ Antitrust/Unfair Competition
- ☒ Code Violations
- ☒ Foreign Judgment
- ☒ Intellectual Property
- ☒ Lawyer Discipline
- ☒ Perpetuate Testimony
- ☒ Securities/Stock
- ☒ Tortious Interference
- ☒ Other:

**Tax**
- ☒ Tax Appraisal
- ☒ Tax Delinquency
- ☒ Other Tax

**Family Law**

**Post-judgment Actions (non-Title IV-D)**
- ☒ Enforcement
- ☒ Modification—Custody
- ☒ Modification—Other

**Marriage Relationship**
- ☒ Annulment
- ☒ Declare Marriage Void
*Divorce*
- ☒ With Children
- ☒ No Children

**Title IV-D**
- ☒ Enforcement/Modification
- ☒ Paternity
- ☒ Reciprocals (UIFSA)
- ☒ Support Order

**Other Family Law**
- ☒ Enforce Foreign Judgment
- ☒ Habeas Corpus
- ☒ Name Change
- ☒ Protective Order
- ☒ Removal of Disabilities of Minority
- ☒ Other:

**Parent-Child Relationship**
- ☒ Adoption/Adoption with Termination
- ☒ Child Protection
- ☒ Child Support
- ☒ Custody or Visitation
- ☒ Gestational Parenting
- ☒ Grandparent Access
- ☒ Paternity/Parentage
- ☒ Termination of Parental Rights
- ☒ Other Parent-Child:

**Probate & Mental Health**

*Probate/Wills/Intestate Administration*
- ☒ Dependent Administration
- ☒ Independent Administration
- ☒ Other Estate Proceedings

- ☒ Guardianship—Adult
- ☒ Guardianship—Minor
- ☒ Mental Health
- ☒ Other:

### 3. Indicate procedure or remedy, if applicable (may select more than 1):

- ☒ Appeal from Municipal or Justice Court
- ☒ Arbitration-related
- ☒ Attachment
- ☒ Bill of Review
- ☒ Certiorari
- ☒ Class Action
- ☒ Declaratory Judgment
- ☒ Garnishment
- ☒ Interpleader
- ☒ License
- ☒ Mandamus
- ☒ Post-judgment
- ☒ Prejudgment Remedy
- ☒ Protective Order
- ☒ Receiver
- ☒ Sequestration
- ☒ Temporary Restraining Order/Injunction
- ☒ Turnover

Filed 12 September 10 A11:28
Chris Daniel - District Clerk
Harris County
ED101J017068687
By: deandra mosley

## CAUSE NO.: 2012-27788

| | | |
|---|---|---|
| **CARLTON ENERGY GROUP, L.L.C.** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **vs.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **CLIVEDEN PETROLEUM COMPANY** | § | |
| **LIMITED and CLIVEDEN** | § | |
| **PETROLEUM SA** | § | |
| *Defendant.* | § | **55TH JUDICIAL DISTRICT** |

### PLAINTIFF'S FIRST AMENDED PETITION TO ENFORCE THE BINDING ARBITRATION CLAUSE

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, CARLTON ENERGY GROUP, L.L.C., PLAINTIFF herein, and files this PLAINTIFF'S FIRST AMENDED PETITION TO ENFORCE THE BINDING ARBITRATION CLAUSE, complaining of and against CLIVEDEN PETROLEUM COMPANY LIMITED and CLIVEDEN PETROLEUM SA, DEFENDANTS herein, and, in support thereof, would respectfully show this Honorable Court the following:

### I. DISCOVERY-CONTROL PLAN

1.    Plaintiff intends that this case be conducted pursuant to a Level 3 Discovery-Control Plan in accordance with Texas Rule of Civil Procedure 190.4.

### II. PARTIES AND SERVICE INFORMATION

2.    Defendant Cliveden Petroleum SA, an agency or instrumentality of the foreign state of Switzerland, has no registered service agent in the State of Texas or the United States of America.  The Country of Switzerland is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.  Accordingly, Plaintiff will serve Defendant with the appropriate summons in accordance with the Hague Convention on the Service Abroad

---

of Judicial and Extrajudicial Documents.  Defendant Cliveden Petroleum SA can be served at its

Switzerland address of:

Cliveden Petroleum SA
Chemin Du Velours 24
1231 Conches
Switzerland

3.     Defendant Cliveden Petroleum Company Limited, an agency or instrumentality of the

foreign state of The People's Republic of China, has no registered service agent in the State of

Texas or the United States of America.  The People's Republic of China is a signatory to the

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.

Accordingly, Plaintiff will serve Defendant Cliveden Petroleum Company Limited with the

appropriate summons in accordance with the Hague Convention on the Service Abroad of

Judicial and Extrajudicial Documents.  Defendant Cliveden Petroleum Company Limited can be

served at the address of its chairman, Mr. Xue Liangqing:

Bejing Office
No. 6-1 Fuchengmen Beidajie
Xicheng District
Bejing, China
Zip Code: 100034
Telephone: (8610) 5855-1114
Fax: (8610) 5855-1000

### III. JURISDICTION AND VENUE

4.     This Court has personal jurisdiction over Defendants as they purposely availed

themselves to the State of Texas' jurisdiction, Defendants had sufficient minimum contacts with

the State of Texas and its residents to warrant being subject to this State's jurisdiction, and to

exercise personal jurisdiction over Defendants and require them to defend a suit in the State of

Texas would not insult the traditional notions of fair play and substantial justice.

5.    This Court has subject matter jurisdiction over this matter as the amount in controversy is in excess of its minimum jurisdictional limits.

6.    Venue is proper in Harris County, Texas as the events or omissions at issue in this lawsuit occurred in whole, or in substantial part, in Harris County, Texas.  Tex. Civ. Prac. & Rem. Code § 15.002(a)(1) (West 2010).

### IV. INTRODUCTION

7.    This lawsuit involves a dispute between Plaintiff and Defendants stemming from Defendants' breach of an "Assignment Agreement" entered into by Tom O'Dell in his capacity as Chairman and Managing Director of Carlton Energy Group, L.L.C. and Paul E. Vickory in his capacity as President of Cliveden Petroleum Company Limited.

8.    Defendants were both part of the same organization when the Assignment Agreement was signed, and, thus, are both proper Defendants.

### V. EVIDENCE RELIED UPON

9.    Plaintiff incorporates the following by reference as if fully set out herein:

    Exhibit A    The "Assignment Agreement" between Plaintiff and Defendants.

### VI. FACTS

10.    Plaintiff signed the Assignment Agreement in his capacity as Chairman and Managing Director of Carlton Energy Group, L.L.C.  (Exhibit A, page 5).  Paul E. Vickroy, signed the Assignment Agreement in his capacity as President of Cliveden Petroleum Company Limited. (Exhibit A, page 5).  The Assignment Agreement was entered into on March 31, 2000.  (Exhibit A, page 5).

11.    The Assignment Agreement reads in relevant part:

...in the event of any dispute between the parties whatsoever arising under this Agreement, the parties agree to submit such dispute to binding arbitration to be held in Harris County, Texas.

(Exhibit A, page 3, clause (4)(b)).

12.     Defendants' actions amounted to a breach of the Assignment Agreement contract, and are, thus, within the scope of the arbitration agreement at issue.

## VII. ARGUMENTS

13.     A written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that arises between the parties after the date of the agreement. Tex. Civ. Prac. & Rem. Code § 171.001(a)(2). The law is abundantly clear in this instance. There was a binding arbitration clause in the Assignment Agreement when the parties signed the agreement, Defendants breached the Assignment Agreement after it was executed, thus, the arbitration clause should be given credence and govern the pursuit of these matters against Defendants.

14.     The causes of action between Plaintiff and Defendants should be compelled to binding arbitration. It is unambiguous that the parties herein contracted and agreed that "any dispute between parties whatsoever arising under this Agreement" be submitted to "binding arbitration."

15.     "Arbitration of disputes is strongly favored under federal and state law. Accordingly, a presumption exists against the waiver of a contractual right to arbitration. *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 898-99 (Tex.1995).

16.     "Any Doubts regarding the scope of arbitration agreement[s] are resolved in favor of arbitration...Because the courts favor arbitration awards as a means of disposing of disputes, the courts indulge every reasonable presumption in favor of upholding the awards." *Koch v. Koch*, 27 S.W.3d 93, 96 (Tex.App.—San Antonio 2000, no pet.).

17.     In determining whether a claim falls within the scope of an arbitration agreement, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is **not** susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)(emphasis added).   The United States Supreme Court and the United State Court of appeals For the Fifth Circuit have characterized arbitration provisions with language similar to the one in this case as "broad arbitration clauses capable of expansive reach." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)(stating that "any dispute, controversy or claim arising out of or in relation to or in connection with this Agreement" is a broad arbitration clause that "embraces all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute."); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397-98 (1967)(labeling as "broad" a clause requiring arbitration of "any controversy or claim arising out of or relating to this Agreement.").

18.     Defendants' actions amounted to a breach of the Assignment Agreement, thereby triggering the arbitration clause fully contained therein.   Undeniably, there is a valid and enforceable agreement to arbitrate between Plaintiff and Defendants.   The claims Plaintiff levy against Defendants arise out of the Assignment Agreement.   Therefore, the arbitration clause, Texas statutes, Texas case law and federal case law all mandate that Plaintiff and Defendants arbitrate these matters in Harris County, Texas.   Plaintiff merely asks that the Court honor the valid agreement to which the parties mindfully entered.

## VIII. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that Defendants answer herein, and that the Honorable Court compel the parties herein to binding arbitration in Harris County, Texas.

Respectfully submitted,

GALOW & SMITH, P.C.
1204 Nueces Street
Austin, Texas 78701
(512) 481-0200
(512) 481-0250 Telefax

By: _____
**JERRY GALOW**
State Bar No. 07594400
Jerry@Galowlaw.com
**ATTORNEY FOR PLAINTIFF
CARLTON ENERGY GROUP, L.L.C.**

05/18/2010  18:11    7139329661                                           PAGE  03/07

PAGE  02
P, 1

03/31/2000  16:19   7136685237
3-31-200  4:19PM    FROM CARLTON/ENERGY/GROUP +1  713 932 9561

# CLIVEDEN PETROLEUM CO. LTD.

## ASSIGNMENT AGREEMENT

This Assignment Agreement ("Agreement") is made and entered into effective as of February 15, 2000 ("Effective Date") by and between Carlton Energy Group, LLC, a Texas limited liability company ("Assignor") and Cliveden Petroleum Co. Ltd., a British Virgin Islands corporation ("Assignee").

**RECITALS.**

A.  Assignor owns and holds an undivided ten percent (10%) working interest together with all rights pertaining thereto (the "Interest") in and under that certain Convention established between and among the Republic of Chad ("Chad"), Trinity Energy Resources, Inc., a Nevada corporation ("Trinity"), Oriental Energy Resources, Ltd., a *Nigerian* corporation ("Oriental"), and Assignor, dated April 7, 1999, together with exploration Permit "H" issued by the government of Chad (collectively, the "Convention"), covering exploration and development in three (3) areas of northern, central, and southern regions of Chad covering approximately one hundred eight million (108,000,000) acres (the "Area").

B.  Assignor desires to assign, and Assignee desires to acquire, the Interest in consideration and exchange for an undivided ten percent (10%) net profits interest in Assignee (the "Assignee Interest").

**AGREEMENT.**

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Assignor and Assignee hereby agree as follows:

(1)  *Assignment of Interest.* For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor agrees to assign, and does hereby transfer and assign to Assignee or its nominee, subject to any requisite approval of the Minister of Mines and Energy of Chad ("Minister"), all of the rights and interest of Assignor in and to the Interest and the Convention.  Assignor shall execute and deliver to Assignee a separate Assignment for acceptance by Assignee and approval by the Minister, in substantially the form attached hereto as Exhibit A hereof (the "Assignment").

(2)  *Grant of Assignee Interest.*  In consideration of the Assignment and this Agreement, Assignee hereby grants to Assignor a carried, undivided ten percent (10%) interest in distributable net profits (as hereinafter defined) of


EXHIBIT
A

Cliveden Petroleum Co. Ltd.
Assignment Agreement
Page 2

Assignee. An amount equal to ten percent (10%) of the distributable net profits of Assignee, determined on a quarterly basis during each calendar year, shall be paid and distributed to Assignor by Assignee within forty-five (45) days after the end of each calendar quarter, accompanied by a statement of distributable net profits prepared by or under the direction of management of Assignee setting forth the computation and determination of distributable net profits of Assignee for the previous calendar quarter. As used herein, the term distributable net profits means the net income of Assignee from earnings and receipts from operations, fees, and disposition of assets, including without limitation, royalties and bonuses, before income taxes, interest on indebtedness, depreciation, amortization, less all costs and expenses of operations, administration, sales, severance, and production taxes, and similar burdens, and all costs hereto or hereinafter incurred by Assignor, including third-party costs with respect to the Convention and other properties; and all investment, exploitation costs and expenditures, whether capitalized or expensed for bookkeeping and accounting purposes, determined on a cash basis, and otherwise in accordance with generally accepted accounting standards consistently applied.

*(excluding salaries of directors, principals or interest owners)*

*Ao*
*PV*

(3)   Assignor Fee. Assignee shall assume payment of a fee to Assignor in the amount of five hundred thousand dollars ($500,000), representing payments owed to Assignor by third parties for the efforts of Assignor in identifying, evaluating, structuring, and negotiating the Convention, which obligation has been assumed by Assignee (the "Fee"); provided, however, that the amount of the Fee shall be payable only out of and to the extent that Assignee shall receive net royalties, fees, bonuses, or other payments associated with a farmout or assignment of any interests owned by Assignee with respect to the Convention, after recoupment by Assignee of all of its investment, costs, and expenses, whether or not capitalized, incurred in connection with the Convention, including third-party costs, fees, commissions, travel expenses, prospect, seismic, engineering, and other "sunk" costs, together with recovery and recoupment of any and all expenditures assumed or incurred by Assignee in connection with and as described in that certain Agreement dated December 27, 1999 between Trinity Energy Resources, Inc. and Assignee.

(4)   Administrative Offices. Effective March 1, 2000, Assignor shall provide and Assignee will be permitted to occupy and utilize a portion of the offices of Assignor located at 952 Echo Lane, Suite #210, Houston, Texas 77024 for the Houston headquarters of Assignee and to support the technical and commercial work that is being undertaken by Assignee and its consultants.

*Ao*
*PV*

Cliveden Petroleum Co. Ltd.
Assignment Agreement
Page 3

For this support and use of office space, Assignee will pay Assignor a fee of ten thousand dollars ($10,000) per month payable in advance on the 1st day of each month beginning March 1, 2000. *Assignor will be reimbursed reasonable direct out of pocket costs expended on behalf of Assignee by Assignor.*

(4)   *General Provisions.*

(a)   This Agreement shall be construed in accordance with, and governed by, the laws of the State of Texas, without giving effect to the conflict of laws provisions thereof. The venue of any legal proceedings whatsoever related to any dispute under this Agreement shall be in the state or federal courts, as the case may be, of Harris County, Texas.

(b)   Notwithstanding anything to the contrary contained in this Agreement, in the event of any dispute between the parties whatsoever arising under this Agreement, the parties agree to submit such dispute to binding arbitration, to be held in Harris County, Texas. The parties shall seek to agree upon a single arbitrator, failing which each party to the dispute shall appoint an arbitrator, who shall be a licensed attorney or licensed arbitrator acting independently and not as an advocate or representative of any party, and the two (2) arbitrators so appointed shall select a third arbitrator. The arbitrators shall meet, review all facts and circumstances related to the dispute, and render their decision as soon as reasonably possible, utilizing the Rules of Arbitration of the American Arbitration Association as to procedure but not as to fees. The final decision shall require the agreement of a majority of the arbitrators, and shall be fully binding and enforceable on the parties in any court of competent jurisdiction, and shall not be appealed to any court of law of any jurisdiction. The costs of the arbitration shall be borne by the parties in such manner as determined by the arbitrators.

(c)   The parties shall hold one another harmless from and against any and all liabilities associated with or related to claims or lawsuits against a party arising out of facts or circumstances occurring prior to the effective date of this Agreement.

(d)   This Agreement shall be held strictly confidential and the terms thereof shall not be disclosed to any individual or entity, other than a party's employees, attorneys, accountants, or consultants, without the prior written consent of both parties hereto. No press releases or

Cliveden Petroleum Co. Ltd.
Assignment Agreement
Page 4

other statements for publication shall be made without the prior written consent of both parties hereto.

(e) The relationship of the parties under this Agreement, including all activities related to the execution, administration, and performance of this Agreement, is that of independent principals and not of a partnership or joint venture between the parties or the designated representatives of the parties in any manner whatsoever. Nothing contained in this Agreement is intended or shall be construed as creating or giving rise to any relationship between the parties, or the designated representatives of the parties, of partnership, employer/employee, principal/agent, or otherwise.

(f) This Agreement and the Assignment reflect the entire agreement of the parties and all parties hereto stipulate that no other representations or agreements have been made, and any representations that may be made in the future will have no effect whatsoever unless made in writing and incorporated into this Agreement through formal amendment.

(g) This Agreement shall not be changed, modified, or amended in any way except in writing, and signed by the authorized representatives of each of the parties hereto.

(h) In the event any provision of this Agreement shall be determined to be invalid or non-binding for any reason whatsoever, the remainder of this Agreement shall continue to be valid and in effect and shall be fully binding on the parties.

(i) This Agreement shall be binding upon and shall inure to the benefit of all parties, their successors, and assigns, except that Assignor shall not be entitled to assign or transfer the Assignee Interest, without the prior written consent of Assignee.

(j) The paragraph headings in this Agreement are inserted for convenience only and shall not control or affect the meaning or construction of any portion of this Agreement.

(k) In the event of a dispute, this Agreement shall be construed neither in favor of nor against the party that drafted this Agreement.

Cliveden Petroleum Co. Ltd.
Assignment Agreement
Page 5

This Agreement may be executed by counterpart signatures and any such counterpart execution, including facsimile execution, shall be valid and fully binding on all parties, as well as their successors and assigns.

AGREED AND EXECUTED THIS 31st DAY OF MARCH, 2000.

CARLTON ENERGY GROUP, L.L.C.        CLIVEDEN PETROLEUM CO. LTD.

By: _____        By: _____
T. C. O'Dell,                      Paul E. Vickrey,
Chairman and Managing Director     President

Filed 12 September 12 A10:07
Chris Daniel - District Clerk
Harris County
ED101J017072945
By: daunshae n. willrich

## CAUSE NO.: 2012-27788

| | | |
|---|---|---|
| CARLTON ENERGY GROUP, L.L.C. | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| CLIVEDEN PETROLEUM COMPANY | § | |
| LIMITED and CLIVEDEN | § | |
| PETROLEUM SA | § | |
| *Defendants.* | § | 55TH JUDICIAL DISTRICT |

### PLAINTIFF'S VERIFIED MOTION TO RETAIN

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, CARLTON ENERGY GROUP, L.L.C., PLAINTIFF herein, and files this its VERIFIED MOTION TO RETAIN in response to the Court's NOTICE OF INTENT TO DISMISS – NO ANSWER FILED, and, in support thereof, would respectfully show this Honorable Court the following:

### I. INTRODUCTION

1.    Plaintiff is Carlton Energy Group, L.L.C.

2.    Defendants are Cliveden Petroleum Company Limited and Cliveden Petroleum SA. It is worth noting that Defendant Cliveden Petroleum Company Limited was the only named defendant in Plaintiff's Original Petition to Enforce the Binding Arbitration Agreement. Defendant Cliveden Petroleum SA was added as a defendant for the first time in Plaintiff's First Amended Petition to Enforce the Binding Arbitration Agreement. When the Court issued its Notice of Intent to Dismiss, only Defendant Cliveden Petroleum Company Limited was a named Defendant.

3.    Defendants have not made appearances or filed answers in this lawsuit.

4.    On September 6, 2012, the Court sent a Notice of Intent to Dismiss "because no answer has been filed in this case." Plaintiff filed its First Amended Petition to Enforce the Binding Arbitration Clause on September 10, 2012.

## II. VERIFICATION

5.    The following is attached as an exhibit, and is incorporated by reference as if fully set out here:

> Exhibit A:          The affidavit of Plaintiff's Counsel, Austin Shell.

## III. FACTS

6.    Plaintiff originally sued Defendant Cliveden Petroleum Company Limited on May 11, 2012, on the belief that is was an agency or instrumentality of the foreign state of Switzerland. Plaintiff mailed the appropriate service documents to the appropriate authorities in Switzerland on May 24, 2012. A response to this service was received on June 13, 2012, entirely written in French. Plaintiff had the documents translated into English. According to the translation, Defendant Cliveden Petroleum Company Limited split into two independent agencies, Defendant Cliveden Petroleum Company Limited (an instrumentality located in The People's Republic of China) and Defendant Cliveden Petroleum SA (an instrumentality located in Switzerland).

7.    Upon further investigation, Plaintiff discovered that Defendant Cliveden Petroleum SA is actually an agency or instrumentality of the foreign state of Switzerland, and has no registered service agent in the State of Texas or the United States of America. The Country of Switzerland is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. Accordingly, Plaintiff is required to serve this Defendant with the appropriate summons in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.

8.    Defendant Cliveden Petroleum Company Limited, an agency or instrumentality of the foreign state of The People's Republic of China, has no registered service agent in the State of Texas or the United States of America.  The People's Republic of China is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. Additionally, in accordance with the Civil Procedure Laws of The People's Republic of China, all documents and evidence to be served must be written in Chinese.  Plaintiff is currently in the process of having the necessary documents translated from English into Chinese.

9.    It is worth noting that The Hague Conference on Private International Law estimates the time for execution of service to The People's Republic of China to be between three and four months; this time frame is independent of the time in transmission from the United State of America to the Central Authority in The People's Republic of China.

## IV. ARGUMENT & AUTHORITIES

10.    The Court should not dismiss Plaintiff's suit on the docket because there is good cause to maintain it on the docket.  Tex. R. Civ. P. 165a(1).  This is a civil nonjury case not involving family law.  Under the Supreme Court's time standards, it should be brought to trial or final disposition within 12 months.  Tex. R. Jud. Admin. 6b.  This case was first filed on May 11, 2012, and has only been on the docket four (4) months.

11.    The Court should retain this case on the docket because there is good cause to maintain the case on the docket, because Plaintiff has acted with diligence in the prosecution of this matter, and because Plaintiff has a reasonable excuse for the delay.

12.    Both Defendants are foreign entities which must be served using the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents - a tedious and lengthy process to say the least.  Every foreign country has its own unique set of laws which govern service of

lawsuits within that country's borders. Plaintiff's counsel and staff were required to familiarize themselves with the specific laws and treaties of both Switzerland and The People's Republic of China. Additionally, the initial response from the Switzerland Central Authority was in French, which required a translation and additional time. At this point, Plaintiff is in the process of having all documents translated into Chinese so as to comply with the laws and treaties of The People's Republic of China.

13.     Plaintiff would ask the Court to note that the estimated time for service of process on Defendant Cliveden Petroleum Company located in The People's Republic of China is between three and four months.

14.     For these reasons, Plaintiff asks the Court to find that (a) good cause has been shown to maintain this case on the docket, (b) that Plaintiff has acted with diligence in the prosecution of this matter, and (c) that Plaintiff has a reasonable excuse for the delay.

## V. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff asks the Court to retain its suit on the docket and such further and additional relief to which Plaintiff may show it is justly entitled in law or in equity.

Respectfully submitted,

GALOW & SMITH, P.C.
1204 Nueces Street
Austin, Texas 78701
(512) 481-0200
(512) 481-0250 Telefax

By: _____
      **JERRY GALOW**
      State Bar No. 07594400
      Jerry@Galowlaw.com
      **AUSTIN SHELL**
      State Bar No. 24079316
      Austin@Galowlaw.com
      **ATTORNEYS FOR PLAINTIFF**
      **CARLTON ENERGY GROUP, L.L.C.**

## VERIFICATION OF AUSTIN SHELL

**STATE OF TEXAS** §
**COUNTY OF HARRIS** §

BEFORE ME, the undersigned Notary Public, on this day personally appeared AUSTIN SHELL, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

"My name is Austin Shell. I am over the age of 18, of sound mind, and am capable of making this verification. I have read Plaintiff's Verified Motion to Retain. The facts stated in it are within my personal knowledge and are true and correct."



AUSTIN SHELL

SUBSCRIBED AND SWORN TO BEFORE ME on this 12th day of September 2012, to certify which witness my hand and official seal.



Notary Public in and for the State of Texas

DORINE HOOD
My Commission Expires
March 29, 2014

EXHIBIT
A

*Verification of Austin Shell*                                                 *Page 1 of 1*

Filed 12 December 10 A12:35
Chris Daniel - District Clerk
Harris County
ED101J017220213
By: Nelson Cuero

Cause No. 2012-27788

| | | |
|---|---|---|
| CALRTON ENERGY GROUP, L.L.C. | § | IN THE DISTRICT COURT OF |
|     *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| CLIVEDEN PETROLEUM COMPANY | § | |
| LIMITED and CLIVEDEN, | § | |
| PETROLEUM SA | § | |
|     *Defendants.* | § | |
| | § | 55th JUDICIAL DISTRICT |

---

## DEFENDANT CLIVEDEN PETROLEUM SA'S SPECIAL APPEARANCE AND ORIGINAL ANSWER

---

Defendant Cliveden Petroleum SA ("Cliveden SA"), files this Special Appearance and Original Answer and asks the Court to sustain its special appearance and dismiss Plaintiff Carlton Energy Group, L.L.C.'s ("Carlton") suit.

I.
### SPECIAL APPEARANCE

In accordance with Rule 120a of the Texas Rules of Civil Procedure, Cliveden SA files this Special Appearance respectfully showing the following:

#### INTRODUCTION

1.     Plaintiff, Carlton, sued Defendant, Cliveden SA to enforce a binding arbitration clause of a contract referred to in Carlton's petition as Assignment Agreement.

2.     Carlton seeks to enforce a contract that was allegedly formed between Carlton and Cliveden Petroleum Company Limited.   Carlton maintains Cliveden Petroleum Company Limited breached the Assignment Agreement and that under the terms of the contract, binding arbitration must resolve the dispute.

3.      Cliveden SA has no relationship to either of the parties in that contract.  Cliveden SA is not a party to the Assignment Agreement.  Cliveden SA is a Swiss entity with no relationship to the Chinese company Cliveden Petroleum Company Limited.   The only thing that these two entities presently share is a part of each other's names.   Suing Cliveden SA was clearly a mistake.

4.      With no relationship to the contract between Carlton and Cliveden Petroleum Company Limited, Cliveden SA can show without question that it should not be forced to go to arbitration. But there is a more fundamental issue, which is the basis of Cliveden SA's Special Appearance. The State of Texas has no personal jurisdiction over Cliveden SA.  Under the Constitutions of both Texas and the United States, a Swiss company with no connection to the State of Texas in any capacity is not required to defend baseless claims against it halfway across the planet. Accordingly, this Court should sustain Cliveden SA's objection to the jurisdiction of the court and dismiss Carlton's case against Cliveden SA.

### BACKGROUND

5.      Cliveden SA is not a resident of the State of Texas.  Cliveden SA is an entity that resides in Switzerland.  It has no registered service agent in the State of Texas or the United States of America.  Cliveden SA does not provide, sell, or purchase any goods or services in Texas.  It does not travel to Texas, loan money to or contract with any Texas entities, or own any real estate in Texas.  Cliveden SA does not maintain a bank account, a post office box, an address listing, or a telephone listing in Texas.  Further, Cliveden SA has never designed any products for use in Texas or even advertised in Texas.  It has never sought or obtained any sort of profit, benefit, or advantage from anyone within the State of Texas.  Cliveden SA has never signed or been a party to any agreement that consents to the personal jurisdiction of Texas courts. Cliveden SA has no connection to Texas.  Nevertheless, Carlton has sued this Swiss entity in the

State of Texas and invited this Texas Court to compel Cliveden SA to go to binding arbitration. This Court should decline such a precarious invitation.

### ARGUMENT & AUTHORITIES

6.      Texas courts do not have jurisdiction over a nonresident defendant unless the defendant has purposefully established "minimum contacts" with Texas and the court's exercise of jurisdiction over the defendant comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).  Cliveden SA does not have minimum contacts with the State of Texas. Further, exercising personal jurisdiction over Cliveden SA would not comport with fair play and substantial justice.  Therefore, the Court has no personal jurisdiction over Cliveden SA.

### A. Cliveden SA has no minimum contacts with the State of Texas.

7.      Texas courts must determine whether a nonresident defendant has purposefully established minimum contacts with Texas. *Moki Mac*, 221 S.W.3d at 575–76; *CSR Ltd. v. Link*, 925 S.W.2d 591, 594, 596 (Tex. 1996); *Guardian Royal*, 815 S.W.2d at 226.  To prove it had no minimum contacts with Texas, the defendant must show that (1) it did not purposefully avail itself of the privilege of conducting activities within Texas, and (2) any contacts it may have had with Texas do not give rise to specific or general jurisdiction. *See Moki Mac*, 221 S.W.3d at 575–76; *Commonwealth Gen. Corp. v. York*, 177 S.W.3d 923, 925 (Tex. 2005); *BMC Software*, 83 S.W.3d at 795–96.  Each prong will be addressed in turn.

### i.    *Cliveden SA did not purposefully avail itself of the privilege of conducting activities within Texas.*

8.     To establish purposeful availment, a defendant's acts must be purposeful rather than random, isolated, or fortuitous, and the defendant must have sought some benefit, advantage, or profit in availing itself of Texas jurisdiction. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338–39 (Tex. 2009); *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 596 (Tex. 2007); *Moki Mac*, 221 S.W.3d at 575; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). Here, Cliveden SA did not purposefully avail itself of the privilege of conducting activities within Texas. And nowhere in Carlton's petition is there any indication otherwise. Indeed, the terms of the "Assignment Agreement"—which is the sole basis of Carlton's petition—make no reference to Cliveden SA. This is because Cliveden SA is completely unrelated to Cliveden Petroleum Company Limited, the party to the agreement at issue. The simple fact is that Clivden SA has not put products in the stream of commerce knowing that some of them could reach Texas; and it did not engage in conduct indicating an intent to serve the Texas market. *See Spir Star AG v. Kimich*, 210 S.W.3d 868, 873 (Tex. 2010); *Moki Mac*, 221 S.W.3d at 576–77; *Michiana*, 168 S.W.3d at 786. Nor did Cliveden SA direct any sales to Texas, design a product for use in Texas, or advertise in Texas. Cliveden SA has not sought any sort of benefit, advantage or profit in or from anyone within the State of Texas.

> ii.    *The contacts—or lack thereof—between Cliveden SA and the State of Texas do not give rise to either specific or general jurisdiction.*

9.     Specific jurisdiction does not apply. Texas courts cannot exercise specific jurisdiction over a nonresident defendant unless the plaintiff's litigation results from injuries that are alleged to arise from or relate to the defendant's contacts with Texas. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010); *Moki Mac*, 221 S.W.3d at 575–76; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 358 (Tex. 1990); see *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984); *Michiana*, 168 S.W.3d at 784–85; *BMC Software*, 83

S.W.3d at 795–96. To establish specific jurisdiction, then, the defendant's acts must have a substantial connection with the operative facts of the litigation. *Spir Star AG v. Kimich*, 210 S.W.3d at 874; *Retamco Operating*, 278 S.W.3d at 340; *Moki Mac*, 221 S.W.3d at 585. Here, there is no such substantial connection. Carlton has unequivocally expressed that this litigation seeks to enforce a binding arbitration provision within the Assignment Agreement. But Carlton admits that the Assignment Agreement was only signed by the other Defendant, Cliveden Petroleum Company Limited, not Cliveden SA. Cliveden SA—as a completely separate entity with no relationship to Cliveden Petroleum Company Limited—was not a party to the Assignment Agreement. Consequently, no substantial connection between Cliveden SA's acts and the operative facts in this litigation exists. Carlton's cause of action does not arise from or relate to Cliveden SA's contacts with Texas. Therefore, the Court does not have specific jurisdiction over Cliveden SA.

10.     General jurisdiction does not apply either. Texas courts cannot exercise general jurisdiction over a nonresident defendant unless the defendant has continuous and systematic contacts with Texas. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 169 (Tex. 2007); *Moki Mac*, 221 S.W.3d at 575; *BMC Software*, 83 S.W.3d at 796; *Guardian Royal*, 815 S.W.2d at 230; *see Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 415–16. Here, Texas courts do not have general jurisdiction over Cliveden SA because Cliveden SA has not had any contacts, let alone continuous or systematic contacts, with the State of Texas. Cliveden SA does not provide, sell, or purchase any goods or services in Texas. Cliveden SA does not travel to Texas, loan money to or contract with any Texas entities, or own any real estate in Texas. Cliveden SA also does not maintain a bank account, a post office box, an address listing, or a telephone listing in Texas. As Carlton correctly observed in its petition, Cliveden SA is a

Swiss entity with no registered service agent in the State of Texas or the United States of America.  Cliveden SA has no relationship with Texas.  Therefore, the Court does not have general jurisdiction over Cliveden SA.

**B.  The court's exercise of jurisdiction over the Cliveden SA does not comport with fair play and substantial justice.**

11.      This Court's assumption of jurisdiction over Defendant Cliveden SA and its property will offend traditional notions of fair play and substantial justice and will be inconsistent with the constitutional requirements of due process; therefore, the Court should decline to exercise jurisdiction over Defendant Cliveden SA.  *See Int'l Shoe Co. v. Washington*, 326 U.S.310, 316 (1945); *Spir Star AG*, 310 S.W.3d at 878; *Moki Mac*, 221 S.W.3d at 575; *Guardian Royal*, 815 S.W.2d at 231.  In evaluating whether the maintenance of an action over a non-resident will offend traditional notions of fair play and substantial justice, courts consider such factors as (1) the burden on defendant, (2) the interest of the forum state in adjudicating the dispute, (3) plaintiff's interest in obtaining convenient and effective relief, (4) the international judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the nations in furthering fundamental social policies.  *Spir Star*, 310 S.W.3d at 878; *Guardaian Royal*, 815 S.W.2d at 231; *Schexnayder v. Daniels*, 187 S.W.3d 238, 246 (Tex. App.—Texarkana 2006, pet. dism'd w.o.j.).  An analysis of these factors establishes that claiming personal jurisdiction over Cliveden SA is not appropriate in this case.

12.      Foremost, the Court's assumption of jurisdiction over Cliveden SA will place an extraordinary burden on Cliveden SA because it does not conduct any business activities in Texas.  The fact that Cliveden SA has never purposefully availed itself of the privileges or protections of Texas law further demonstrates the extraordinary burden on Cliveden SA.  Similarly, the fact that Cliveden SA maintains no offices or employees in Texas, and neither

owns nor rents property in Texas, also establishes the unreasonableness of requiring Cliveden SA to defend this suit in Texas. The burden of forcing Cliveden SA, a Swiss company, to defend Carlton's claims halfway across the world from where Cliveden SA conducts any substantial business activities is onerous in comparison to the lack of contact it has with Texas.

13.     Finally, the Court's assumption of jurisdiction over Cliveden SA will not further any substantive policy interest of the nations. There are no circumstances weighing in favor or against the shared interest of the nations in furthering fundamental social policies. Moreover, it is unclear how subjecting a Swiss-based company to jurisdiction in Texas serves in any way, or even implicates, the fundamental social policies of Texas, as Cliveden SA has never purposely availed itself of the privileges and protections of Texas law. *See Madara v. Hall*, 916 F.2d 1510, 1519 (11th Cir. 1990).

14.     In applying these factors to this case, it is clear that the Court's assumption of jurisdiction over Cliveden SA will violate Cliveden SA's due process rights guaranteed under the Constitutions of Texas and the United States. Accordingly, the maintenance of this action in Texas will offend the traditional notions of fair play and substantial justice. Therefore, this Court should not assert personal jurisdiction over Cliveden SA.


## II.
## ORIGINAL ANSWER

Subject to this Special Appearance, Cliveden SA files its Original Answer, respectfully showing the following:

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Cliveden SA generally denies each and every allegation in Plaintiff's First Amended Petition to Enforce the Binding Arbitration Clause. Cliveden SA requests that Carlton be required to prove each and every

element of its claims by a preponderance of the evidence and reserves its right to assert any additional defenses and claims which may be applicable.

## CONCLUSION

Defendant does not have the minimum contacts with the State of Texas to justify a Texas court's assumption of jurisdiction.  If this Court assumes jurisdiction over defendant, it will offend tradition notions of fair play and substantial justice.  For these reasons, Cliveden SA asks the Court to set its special appearance for hearing and, after the hearing, sustain Cliveden SA's special appearance and enter a final judgment dismissing plaintiff's cause of action.   In the alternative, Cliveden SA respectfully requests the Court to enter a judgment that Carlton take nothing and that the Court enter a take-nothing judgment in favor of Cliveden SA.  Cliveden SA requests such other and further relief both at law and in equity as to which he may show himself to be justly entitled.

Respectfully submitted,

GOFORTH EASTERLING LLP

By: _____
Daniel O. Goforth
State Bar No.: 08064000
Kate Harrison Easterling
State Bar No.: 24053257
4900 Woodway, Ste. 750
Houston, Texas  77056
Telephone:   (713) 650-0022
Facsimile:    (713) 650-1669

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on all known counsel of record in accordance with Rule 21 of the Texas Rules of Civil Procedure on this the _____ day of _____, 2012.

Daniel O. Goforth

## VERIFICATION

STATE OF TEXAS    §
HARRIS COUNTY    §

Before me, the undersigned notary, on this day personally appeared Daniel O. Goforth, the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

"My name is Daniel O. Goforth. I am capable of making this verification. I have read Defendant Cliveden Petroleum SA's Special Appearance and Original Answer. The facts stated in it are within my personal knowledge and are true and correct."

_____
Daniel O. Goforth

**GIVEN UNDER MY HAND AND SEAL OF OFFICE this the 9th day of December, 2012.**

RHONDA D. FISHER
MY COMMISSION EXPIRES
July 1, 2015

_____
NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS

MY COMMISSION EXPIRES:          July 1, 2015

Filed 12 December 10 A12:35
Chris Daniel - District Clerk
Harris County
ED101J017220213
By: Nelson Cuero

Cause No. 2012-27788

| | | |
|---|---|---|
| CALRTON ENERGY GROUP, L.L.C. | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| CLIVEDEN PETROLEUM COMPANY | § | |
| LIMITED and CLIVEDEN, | § | |
| PETROLEUM SA | § | |
| *Defendants.* | § | |
| | § | 55th JUDICIAL DISTRICT |

## ORDER

On the ___ day of December, 2012, the Court having considered Defendant Cliveden Petroleum SA's Special Appearance, the responses, the evidence on file with the Court, and the arguments of counsel, is of the opinion that Defendant Cliveden Petroleum SA does not have the minimum contacts with the State of Texas to justify this Court's assumption of jurisdiction over Defendant Cliveden Petroleum SA.

It is therefore, ORDERED that Plaintiff Carlton Energy Group, L.L.C.'s claims and causes of action asserted in the above-styled and numbered cause against Defendant Cliveden Petroleum SA are hereby dismissed with prejudice.

Signed this ___ day of December, 2012.

_____
PRESIDING JUDGE