IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CARLTON ENERGY GROUP LLC,      §
                               §
     Plaintiff,                §
                               §
v.                             §        CIVIL ACTION NO. H-13-95
                               §
CLIVEDEN PETROLEUM CO.         §
LTD., et al.,                  §
                               §
     Defendants.               §

<u>**MEMORANDUM AND RECOMMENDATION**</u>

Pending before the court[1] is Defendant Cliveden Petroleum Co. Ltd.'s ("Cliveden") Motion to Compel Arbitration and to Dismiss Proceedings (Doc. 68).  The court has considered the motion, the response and reply, the court proceedings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant Cliveden's motion to dismiss be **DENIED**.

### I.  Case Background[2]

Plaintiff filed this matter in state court, seeking an order to enforce a contractual arbitration clause.  Defendants timely removed the case to this court.

### A.  **Factual Background**

On March 31, 2000, Plaintiff and Defendant Cliveden entered an

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 31.

[2]    The court repeats much of the case background from the Memorandum and Recommendation entered on August 6, 2013, (Doc. 54) and retains the original citations to the record.  Several of the cited documents have been submitted more than once and are also attached to recent filings.

agreement ("Assignment Agreement") assigning Defendant Cliveden all of Plaintiff's ten-percent working interest in a Convention established among the Republic of Chad, Trinity Energy Resources, Incorporated, Oriental Energy Resources, Limited, and Plaintiff, which covered oil exploration and development in three areas of Chad (the "Concession").[3] In exchange, Plaintiff received a ten-percent interest in Defendant Cliveden's distributable net profits.[4] The Assignment Agreement included an arbitration provision.[5]

## B. <u>Procedural Background</u>

On May 11, 2012, Plaintiff filed its Original Petition to Enforce the Binding Arbitration Clause against Defendant Cliveden in Texas state court.[6] Plaintiff alleged that Defendant Cliveden breached the Assignment Agreement and that all claims should be resolved in binding arbitration pursuant to the terms of their agreement.[7] Plaintiff requested that the court "honor the valid agreement to which the parties mindfully entered" and compel

---

[3]    <u>See</u> Doc. 1-1, Ex. 1 to Notice of Removal, Pl.'s 1st Am. Pet. to Enforce the Binding Arbitration Clause p. 3; Doc. 1-1, Ex. 1 to Notice of Removal, Pl.'s 1st Am. Pet. to Enforce the Binding Arbitration Clause, Ex. A, Assignment Agreement p. 1.

[4]    Doc. 1-1, Ex. 1 to Notice of Removal, Pl.'s 1st Am. Pet. to Enforce the Binding Arbitration Clause, Ex. A, Assignment Agreement pp. 1-2.

[5]    <u>See</u> <u>id.</u> p. 3.

[6]    <u>See</u> Doc. 1-2, Ex. 2 to Notice of Removal, Pl.'s Original Pet. to Enforce the Binding Arbitration Clause.

[7]    <u>See</u> <u>id.</u> pp. 3-5.

arbitration.[8]

On September 10, 2012, before effecting service of its first petition, Plaintiff amended its petition to add Defendant Cliveden Petroleum SA ("CPSA").[9]  Therein, Plaintiff alleged that Defendant CPSA and Defendant Cliveden "were both part of the same organization when the Assignment Agreement was signed."[10]  Other than the addition of Defendant CPSA and another change unrelated to the merits of the lawsuit, the amended petition was virtually identical to the original.[11]

On December 10, 2012, Defendant CPSA filed a special appearance and answered Plaintiff's petition.[12]  Defendant CPSA claimed that it had no connection to the Assignment Agreement or Defendant Cliveden and, thus, should not be compelled to arbitration.[13]  Defendant CPSA objected to the court's personal jurisdiction, claiming that it was a Swiss company with no ties to the State of Texas.[14]

---

[8]    Id. p. 5.

[9]    See Doc. 1-1, Ex. 1 to Notice of Removal, Pl.'s 1st Am. Pet. to Enforce the Binding Arbitration Clause.

[10]    Id. p. 3.

[11]    Compare Doc. 1-2, Ex. 2 to Notice of Removal, Pl.'s Original Pet. to Enforce the Binding Arbitration Clause with Doc. 1-1, Ex. 1 to Notice of Removal, Pl.'s 1st Am. Pet. to Enforce the Binding Arbitration Clause.

[12]    See Doc. 1-2, Ex. 2 to Notice of Removal, Def. CPSA's Special Appearance & Original Answer.

[13]    See id. p. 2 (unnumbered).

[14]    See id.

Defendant Cliveden received service of Plaintiff's amended petition on December 20, 2012.[15]  On January 14, 2013, Defendant Cliveden (with the consent of Defendant CPSA) removed this action based on diversity jurisdiction.[16]

On January 16, 2013, Defendant Cliveden filed a motion to dismiss Plaintiff's amended petition.[17]  Before Plaintiff responded, Plaintiff filed a motion to remand and a motion to substitute counsel.[18]  The court granted the latter motion, and Plaintiff's new counsel responded to Defendant's motion to dismiss.[19]

On March 5, 2013, Defendant Cliveden responded to Plaintiff's motion to remand.[20]  A few days after the response was filed, Plaintiff withdrew the motion to remand and contemporaneously filed a motion for leave to file an amended complaint.[21]  Plaintiff's motion sought permission: (1) to add Defendants China National Petroleum Corporation ("CNPC") and PetroChina Company Limited ("PetroChina"); (2) to add background facts regarding the parties'

---

[15]  See Doc. 1, Notice of Removal p. 3.

[16]  See id. pp. 1-2.

[17]  See Doc. 3, Def. Cliveden's Mot. to Dismiss.

[18]  See Doc. 8, Pl.'s Mot. to Remand; Doc. 9, Pl.'s Mot. to Substitute Counsel.

[19]  See Doc. 10, Order Dated Feb. 6, 2013; Doc. 19, Pl.'s Resp. to Def. Cliveden's Mot. to Dismiss.

[20]  See Doc. 23, Def. Cliveden's Resp. to Pl.'s Mot. to Remand.

[21]  See Doc. 25, Pl.'s Notice of Withdrawal of Mot. to Remand; Doc. 26, Pl.'s (1st) Mot. for Leave to File Am. Compl.

dispute; (3) to assert claims for breach of contract, anticipatory breach of contract, fraudulent transfer, oppression, and alter-ego liability; and (4) to request an accounting and a constructive trust.[22] Plaintiff attached a proposed second amended complaint, which completely omitted any request that the case be compelled to arbitration.[23]

Defendant Cliveden filed its response on April 12, 2013.[24] In the meantime, on April 4, 2013, Defendant Cliveden agreed in a letter to Plaintiff's counsel to an ad hoc arbitration on the condition that it would be binding and that Plaintiff would not subsequently argue that it should have been conducted by the American Arbitration Association.[25]

On April 18, 2013, the undersigned received the case on referral for pretrial management.[26] Shortly thereafter, purportedly in response to a request by the court, Plaintiff filed another copy of the proposed second amended complaint, this time, as a stand-

---

[22]    See Doc. 26, Pl.'s (1st) Mot. for Leave to File Am. Compl. p. 2 (unnumbered).

[23]    See Doc. 26-1, Ex. A to Pl.'s (1st) Mot. for Leave to File Am. Compl., Pl.'s Proposed 2nd Am. Compl.

[24]    See Doc. 29, Def. Cliveden's Resp. to Pl.'s (1st) Mot. for Leave to File Am. Compl.

[25]    See Doc. 29-1, Ex. A to Def. Cliveden's Resp. to Pl.'s (1st) Mot. for Leave to File Am. Compl., Letter from Crady, Jewett & McCulley, LLP, to Williams Kherkher Hart Boundas LLP Dated Apr. 4, 2013.

[26]    See Doc. 31, Order Dated Apr. 18, 2013.

alone docket entry.[27]  The court set a hearing on Plaintiff's motion for leave to amend.[28]

Before the hearing, Plaintiff filed a reply to Defendant Cliveden's response and attached a revised, proposed second amended complaint without filing an amended motion to amend.[29]  In the revised version of the complaint, Plaintiff no longer named CNPC as a defendant, indicating in its reply that it did so due to the implication of foreign sovereign immunity.[30]  Plaintiff named four new defendants in addition to PetroChina: China National Oil and Gas Exploration and Development Corporation ("CNODC"); China Petroleum Exploration & Development Company Limited ("CNPC E&D"); CNPC International (Chad) Ltd. ("CNPCIC BVI");[31] and China National Oil and Gas Exploration and Development Corporation International

---

[27]   See Doc. 33, Pl.'s 2nd Am. Comp.; Doc. 42, Tr. of Hr'g on May 24, 2013 p. 35.

[28]   See Doc. 34, Notice of Setting Dated May 2, 2013.

[29]   See Doc. 37, Pl.'s Reply to Def. Cliveden's Resp. to Pl.'s (1st) Mot. for Leave to File Am. Compl.; Doc. 37-1, Ex. 1 to Pl.'s Reply to Def. Cliveden's Resp. to Pl.'s (1st) Mot. for Leave to File Am. Compl., Pl.'s (Revised) 2nd Am. Compl.

[30]   See Doc. 37, Pl.'s Reply to Def. Cliveden's Resp. to Pl.'s (1st) Mot. for Leave to File Am. Compl. pp. 1-2; Doc. 37-1, Ex. 1 to Pl.'s Reply to Def. Cliveden's Resp. to Pl.'s (1st) Mot. for Leave to File Am. Compl., Pl.'s (Revised) 2nd Am. Compl. pp. 1-4.

[31]   In response to Defendant Cliveden's representation that "CNPC International (Chad) Ltd.," not "CNPC International (Chad) Co. Ltd.," is its direct parent, Plaintiff attached a second revised, proposed second amended complaint to its response to Defendant Cliveden's post-hearing brief to make the correction.  See Doc. 50, Pl.'s Resp. to Def. Cliveden's Post-Hearing Brief p. 7; Doc. 50-5, Ex. 5 to Pl.'s Resp. to Def. Cliveden's Post-Hearing Brief, Pl.'s (2nd Revised) Proposed 2nd Am. Compl.

Holding Ltd. ("CNODCI").[32]  Plaintiff also added a section on arbitration, stating: "In the alternative, in the event that Cliveden moves to compel arbitration[] and is found not to have waived arbitration or defaulted on its obligation to arbitrate with Cliveden [sic] through its conduct actively opposing arbitration, then all Defendants should be compelled to arbitrate for several reasons[.]"[33]  The reasons given were that each of the proposed defendants was a successor or assign of Defendant Cliveden, that each defendant was an alter ego of Defendant Cliveden, and that each defendant assumed the Assignment Agreement by treating the working interest assigned by Plaintiff to Defendant Cliveden as its own.[34]

At the hearing, Plaintiff reiterated its position that the parties it sought to add also should be compelled to arbitration as successors to or alter egos of Defendant Cliveden.[35]  Plaintiff explained that its current counsel, after substituting for prior counsel, discovered the need to include the additional parties upon its review of the case.[36]

When questioned by the court during the hearing, Plaintiff

---

[32]    See Doc. 37-1, Ex. 1 to Pl.'s Reply to Def. Cliveden's Resp. to Pl.'s (1st) Mot. for Leave to File Am. Compl., Pl.'s (Revised) 2nd Am. Compl. pp. 2-4

[33]    Id. p. 28.

[34]    See id. pp. 28-29.

[35]    Doc. 42, Tr. of Hr'g on May 24, 2013 pp. 4-5.

[36]    Id. pp. 6-7.

agreed that the "arbitration agreement is binding."[37]  Based on that representation and the understanding that Plaintiff would treat an arbitration outside of the AAA ("ad hoc arbitration") as "final and binding," Defendant Cliveden agreed to participate in an ad hoc arbitration following AAA rules.[38]  Plaintiff and Defendant Cliveden held different views concerning whether the court should allow Plaintiff to add new defendants through amendment prior to compelling arbitration.[39]  The court heard arguments on this issue and allowed the parties two weeks to submit additional briefing.[40]

On August 6, 2013, the court entered a Memorandum and Recommendation on Defendant Cliveden's motion to dismiss Plaintiff's pleading.[41]  In the Memorandum and Recommendation, the court noted that, since the filing of the motion, the parties had reached an agreement that Plaintiff and Defendant Cliveden are contractually bound to arbitrate their disputes.[42]  "The court agrees that the Assignment Agreement requires Plaintiff and

---

[37]   Id. p. 9.

[38]   Id. p. 10; see also Doc. 29-1, Ex. A to Def. Cliveden's Resp. to Pl.'s Mot. for Leave to File Am. Compl., Letter from Crady, Jewett & McCulley, LLP, to Williams Kherkher Hart Boundas LLP Dated Apr. 4, 2013 ("Cliveden will agree to arbitrate the disputes that [Plaintiff] has with Cliveden that arise out of the February 15, 2000, Assignment Agreement . . . in an ad hoc arbitration . . . provided that [Plaintiff] stipulates that the arbitration will be fully binding and that [Plaintiff] will not subsequently argue that the arbitration should have been administered by the [AAA] . . . .").

[39]   See, e.g., Doc. 42, Tr. of Hr'g on May 24, 2013 pp. 9-11.

[40]   See id. pp. 4-34, 36-37.

[41]   See Doc. 54, Mem. & Recommendation Entered Aug. 6, 2013.

[42]   Id. p. 12.

Defendant [Cliveden] to arbitrate any dispute arising under the contract and that the arbitration is to be binding."[43]   The undersigned, therefore, recommended that the motion to dismiss be denied as moot, and, in the absence of any objection, the district court adopted the recommendation.[44]

On August 6, 2013, the court also issued an order on Plaintiff's motion for leave to file an amended complaint.[45]   The court denied the motion for leave to amend because the proposed amendment would alter the action so significantly from its original purpose of enforcing a contractual arbitration "as to create an entirely new lawsuit."[46]   The court found that the request did not meet even the liberal standards of Federal Rule of Civil Procedure 15(a).[47]

However, the court found that the proposed amended complaint raised "a colorable claim regarding whether any of the additional defendants must go to arbitration as a successor in interest subject to the terms of the Assignment Agreement or an alter ego of Defendant [Cliveden]."[48]   To address that issue, the court ordered

---

[43]   Id.

[44]   See id. p. 13; Doc. 55, Order Dated Aug. 22, 2013.

[45]   See Doc. 53, Order Dated Aug. 6, 2013.

[46]   Id. p. 9.

[47]   See id.

[48]   Id. p. 10.

the parties to determine whether they could agree on the proper parties to arbitration and, in the event they were not able to reach an agreement, stated that it would allow discovery on Defendant Cliveden's corporate relationship with the proposed defendants, Defendant Cliveden's financial status, and the disposition of its corporate assets.[49]

Shortly after the court entered its ruling, Plaintiff and Defendant Cliveden met to discuss what entities should participate in arbitration.[50]  Defendant Cliveden maintained the position that, as owner of a fifty-percent working interest in the Concession, it was the only proper party to arbitration and stated that it was prepared to provide evidence in support of its position.[51]

On September 5, 2013, Defendant Cliveden filed an answer.[52] On September 17, 2013, Plaintiff sent Defendant Cliveden a letter request for the production of documents dating back to January 1, 2000.[53]  Defendant Cliveden responded that it would "only produce documents possessed by Cliveden that address [the] question as to whether Cliveden still owns 50% of the working interest in the

---

[49]    See id. pp. 10-11.

[50]    See Doc. 62, Tr. of Hr'g on Dec. 18, 2013 p. 3; Doc. 68, Def. Cliveden's Mot. to Compel Arbitration & to Dismiss Proceedings p. 5.

[51]    See Doc. 62, Tr. of Hr'g on Dec. 18, 2013 p. 3; Doc. 68, Def. Cliveden's Mot. to Compel Arbitration & to Dismiss Proceedings p. 5.

[52]    See Doc. 56, Def. Cliveden's Answer.

[53]    See Doc. 68-5, Ex. C to Def. Cliveden's Mot. to Compel Arbitration & to Dismiss Proceedings, Letter from Armi Easterby to David Levy Dated Sept. 17, 2013.

Concession, so that [Plaintiff could] be confident that Cliveden is the only proper and necessary counter-party to the arbitration."[54] Defendant Cliveden withheld production pending the entry of a protective order, which the parties filed in mid-December and the court signed immediately.[55]

In the meantime, Plaintiff served on Defendant Cliveden formal requests for discovery on November 13, 2013.[56] While those requests were outstanding, the court held a status conference on December 13, 2013.[57] The court asked for an update on progress toward arbitration, and Plaintiff reported that the parties had met, that Plaintiff had requested discovery, and that Plaintiff had not initiated arbitration proceedings pending Defendant Cliveden's responses to the discovery requests.[58] The court stated, "I can see that [Plaintiff] need[s] some assurance that [Plaintiff is] going to be arbitrating with the correct party and not just some mirror or shell that's going to be . . . empty at the end of the day . .

---

[54]     See Doc. 68-6, Ex. D to Def. Cliveden's Mot. to Compel Arbitration & to Dismiss Proceedings, Letter from David Levy to Armi Easterby p. 1 Dated Oct. 17, 2013.

[55]     See id.; Doc. 58, Agreed Mot. for Protective Order; Doc. 60, Protective Order.

[56]     See Doc. 68-7, Ex. E to Def. Cliveden's Mot. to Compel Arbitration & to Dismiss Proceedings, Pl.'s 1st Interrogs. to Defs.; Doc. 68-8, Ex. F to Def. Cliveden's Mot. to Compel Arbitration & to Dismiss Proceedings, Pl.'s Reqs. for Produc.

[57]     See Doc. 59, Min. Entry Dated Dec. 13, 2013.

[58]     See Doc. 62, Tr. of Hr'g on Dec. 18, 2013 pp. 3-5.

. . [T]hat's a real concern."[59]

On December 13, 2013, Defendant Cliveden responded to the discovery requests, agreeing to produce the Certification de Conformite[60] and objecting that the discovery requests went beyond the scope of the court's order.[61] Defendant Cliveden produced six documents on the discoverable topics a few days later.[62] On December 23, Plaintiff served a subpoena on Gaffney, Cline & Associates ("GCA") seeking documents related to a "reserves estimation and evaluation" report that GCA prepared on petroleum assets in Chad and elsewhere in which CNODC had interests.[63]

On January 17, 2014, Defendant Cliveden filed the pending motion to compel arbitration and to dismiss the proceedings.[64] In addition to the requests mentioned in the motion's heading,

---

[59]     Id. pp. 6-7.

[60]     As represented by Defendant Cliveden, the Certification de Conformite was its most recent financial statement as of February 13, 2014.  See Doc. 83, Tr. of Hr'g on February 13, 2014 p. 5.

[61]     Doc. 62, Tr. of Hr'g on Dec. 18, 2013 p. 7 (stating that Defendant Cliveden was responding to the discovery requests to the extent it believed they were within the scope of the court's order); see also Doc. 70-5, Ex. D to Pl.'s Mot. to Compel, Def. Cliveden's Resps. to Pl.'s 1st Req. for Produc.

[62]     See Doc. 70, Pl.'s Mot. to Compel p. 6.

[63]     See Doc. 68-9, Ex. G to Def. Cliveden's Mot. to Compel Arbitration & to Dismiss Proceedings, Notice of Subpoena in a Civ. Case; Doc. 68-10, Ex. H to Def. Cliveden's Mot. to Compel Arbitration & to Dismiss Proceedings, Subpoena to Produc. Docs., Info., or Objects to Permit Inspection of Premises in a Civ. Action; Doc. 68-11, Ex. I to Def. Cliveden's Mot. to Compel Arbitration & to Dismiss Proceedings, Exhibit A: Docs. Requested; Doc. 68-12, Ex. J to Def. Cliveden's Mot. to Compel Arbitration & to Dismiss Proceedings, Report by Gaffney, Cline & Assocs.

[64]     See Doc. 68, Def. Cliveden's Mot. to Compel Arbitration & to Dismiss Proceedings.

Defendant Cliveden argued that discovery concerning other parties was irrelevant to the issue of whether Plaintiff and Defendant Cliveden must arbitrate their dispute and asked the court to quash any further discovery.[65]  A few days later, GCA filed a motion to quash the subpoena that Plaintiff had served on it.[66]

On January 22, 2014, Plaintiff filed a motion to compel discovery.[67]  The court held a hearing on February 13, 2014.[68]  At that time, Plaintiff had received only the six documents initially turned over by Defendant Cliveden.[69]  Those six documents, however, raised significant enough questions regarding the structure and financing of Defendant Cliveden to move the court to grant Plaintiff's motion to compel.[70]  The court allowed discovery on the eight categories outlined in Plaintiff's September 17, 2013 letter request.[71]  The court also found that Plaintiff had developed the foundation for its alter ego claim enough to "get [its] toe over the line as far as an amended complaint" and ordered Plaintiff to refile a motion for leave to amend.[72]

---

[65]    See id.

[66]    See Doc. 69, Opposed Mot. to Quash Subpoena of GCA.

[67]    See Doc. 70, Pl.'s Mot. to Compel.

[68]    See Doc. 81, Min. Entry Dated Feb. 13, 2014.

[69]    See Doc. 83, Tr. of Hr'g on Feb. 13, 2014 p. 22.

[70]    See id. p. 23.

[71]    See id. p. 30.

[72]    Id. p. 11.

Defendant Cliveden filed objections to the discovery order.[73] On April 4, 2014, the district court entered an order addressing the objections.[74] Acknowledging Defendant Cliveden's position that discovery prevented a speedy referral to arbitration, the district court stated, "The court is mindful of the competing interests here — Cliveden's right to have the dispute resolved by arbitration and [Plaintiff's] right to have all proper parties present at the arbitration."[75] The court concluded that the discovery was "relevant to an issue properly pending before this court, that is, whether any other entity should be compelled to arbitration with Cliveden" under any applicable state law theory and overruled Defendant Cliveden's objections.[76] The court further noted that, if the court granted Plaintiff's motion for leave to amend, Plaintiff would be required to obtain personal jurisdiction over the additional parties and those parties would have the opportunity to challenge personal jurisdiction and oppose a motion to compel them to arbitration.[77] The court postponed, pending those actions, Defendant Cliveden's motion to compel arbitration.[78]

---

[73]   See Doc. 85, Def. Cliveden's Objections.

[74]   See Doc. 92, Order Dated Apr. 4, 2014.

[75]   Id. p. 6.

[76]   Id.

[77]   See id. p. 7.

[78]   See id.

14

On May 5, 2014, Defendant Cliveden filed a motion for protection and to modify the district court's order.[79] Defendant Cliveden argued that the some of the responsive documents were covered by the attorney-client privilege and the work-product doctrine and that disclosure of certain material regarding the operation of the Concession might breach Defendant Cliveden's confidentiality obligations to the Republic of Chad under Chadian law.[80] On May 21, 2014, Plaintiff filed a motion to compel complete compliance with the court's prior orders.[81] Plaintiff contemporaneously sought additional time to file its motion for leave to amend until Defendant Cliveden produced all of the documents ordered by the court.[82]

On June 10, 2014, the court held a hearing on the two pending discovery motions.[83] After listening to oral arguments, the court granted in part Defendant Cliveden's motion for protection and granted Plaintiff's motion to compel, stating:

> I find that the information previously ordered is relevant to [Plaintiff's] allegation that one or more entities may be an alter ego of Cliveden. I find persuasive the opinion of [Plaintiff's] legal expert who avert[ed] that the [C]onvention would not prohibit the

---

[79]     See Doc. 94, Def. Cliveden's Mot. for Protection & Mot. to Modify the Order of Apr. 4, 2014.

[80]     See id. p. 1.

[81]     See Doc. 98, Pl.'s Mot. to Compel Produc. pp. 1, 8.

[82]     See id. p. 8.

[83]     See Doc. 123, Min. Entry Dated June 10, 2014.

disclosure of financial information in the case here where [Plaintiff] owns a ten[-]percent net profits interest in Cliveden.   I find that the financial information is not petroleum data prohibited from disclosure under the [C]onvention.   It may be deemed confidential under the [C]onvention because it bears on royalty payments owed to the Chadian government. However, this data has been produced to third party vendors such as [GCA] and the [Securities Exchange Commission] when it suits Cliveden.   And I find that Cliveden's evidence that there is a substantial risk that the Chadian government may object to the disclosure and there may be criminal penalties is exaggerated in light that the same type of information is disclosed without penalty or objection to the SEC.   And I'm further unpersuaded by Cliveden's argument that [Plaintiff] has enough information to proceed with the alter ego theory. All information previously . . . ordered produced, must be produced and if it's relevan[t] to a merits issue as well, to me, that's not a reason to grant protection. Therefore, Cliveden's Motion for Protection is granted in part to the extent that Cliveden may redact what is petroleum data[,] that technical definition in the [C]onvention[,] but must produce other financial information.[84]

The court also ordered Plaintiff to file a motion for leave to amend within two weeks of receiving the complete responses to discovery.[85]

Plaintiff requested and received a brief extension of time to file its motion for leave to amend.[86]   In the motion, Plaintiff requested that the court allow it to add six defendants (PetroChina, CNODC, CNPC E&D, CNODCI, CNPCIC BVI, and CNPC International (Chad) Co. Ltd.), all of which are parent or

---

[84]     Doc. 128, Tr. of Hr'g on June 10, 2014 pp. 13-14.

[85]     See id. pp. 14-15.

[86]     See Doc. 130, Pl.'s Unopposed Mot. for Extension of Time; Doc. 131, Order Dated July 8, 2014.

affiliate companies of Defendant Cliveden.[87]  Plaintiff no longer named Cliveden Petroleum SA as a defendant.[88]  On August 26, 2014, the court granted Plaintiff's motion, to which no responsive brief had been filed.[89]  The court found that, although the evidence did not establish alter ego, it did give rise to the suggestion of alter ego sufficient to justify allowing amendment under the liberal parameters of Federal Rule of Civil Procedure 15.[90]  The court did not address Plaintiff's other arguments in favor of amendment.[91]

The court now considers Defendant Cliveden's motion to compel arbitration and to dismiss the proceedings in light of the procedural developments since its filing over seven months ago.

## II.  Arbitration Standard

The Federal Arbitration Act ("FAA") applies to cases brought in this court and states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall

---

[87]  See Doc. 132, Pl.'s (2nd) Mot. for Leave to File Am. Compl. p. 1.

[88]  See id.; Doc. 132-2, Ex. A to Pl.'s Mot. for Leave to File Am. Compl. pp. 1-6.

[89]  See Doc. 133, Order Dated August 26, 2014.

[90]  See id. p. 7.

[91]  See id. p. 7 n.19.

> be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  The FAA allows a party that has entered an arbitration agreement to request an order compelling the parties to proceed with arbitration.  9 U.S.C. § 4.  If the court is "satisfied" that an action is subject to an enforceable arbitration provision, the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.

"[S]tays are required if the claims are 'referable to arbitration under an agreement in writing,'" which encompasses more than merely "disputes between parties to a written arbitration agreement."  Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009).  "If a written arbitration provision is made enforceable against (or for the benefit of) a third party under state contract law, the statute's terms are fulfilled."  Id.  Traditional principles of state contract law determine whether an arbitration agreement can be enforced by or against nonparties to the agreement.  See id. at 630-31; see also Todd v. S.S. Mut. Underwriting Ass'n (Bermuda) Ltd., 601 F.3d 329, 333-34 (5th Cir. 2010)(acknowledging that, after Carlisle, nonsignatories to arbitration agreements can be compelled to arbitration based on traditional principles of state law such as piercing the corporate veil, alter ego, and estoppel).  The court makes the determination.

18

See <u>QPro Inc. v. RTD Quality Servs. USA, Inc.</u>, 761 F. Supp.2d 492, 497 (S.D. Tex. 2011)(citing <u>Carlisle</u>, 556 U.S. at 630)(referring specifically to deciding whether a nonsignatory may enforce an arbitration agreement against a signatory).

## III. Discussion

Defendant Cliveden argues that the court should compel Plaintiff to arbitrate its claims against Defendant Cliveden under the FAA and/or the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958,[92] ("New York Convention"). Defendant Cliveden points out that it and Plaintiff agree that the claims against Defendant Cliveden are arbitrable and, therefore, moves the court to dismiss the claims against it in favor of arbitration.

With regard to other potential parties to arbitration, Defendant Cliveden argues that court should not delay allowing Plaintiff and Defendant Cliveden to resolve their dispute in the forum they selected by contract. "In the event that [Plaintiff] obtains an arbitral award against Cliveden and believes other parties are responsible for satisfying the award, [Plaintiff] could then seek a judicial determination about the potential liability of other parties."[93]

---

[92]    21 U.S.T. 2517; T.I.A.S. No. 6997. <u>See</u> 1970 WL 104417. The treaty was entered into force for the United States on Dec. 29, 1970. <u>See</u> 9 U.S.C. § 201.

[93]    Doc. 68, Def. Cliveden's Mot. to Compel Arbitration & to Dismiss Proceedings, pp. 13-14.

Plaintiff casts the issue as whether the additional defendants must also be compelled to arbitrate and complains that Defendant Cliveden stonewalled Plaintiff's discovery in an attempt "to avoid arbitration for Cliveden's parents and affiliates by preempting this Court's final ruling on [Plaintiff's] Motion for Leave to Amend."[94]   As of the date that Defendant Cliveden's motion was filed, Plaintiff argues, the motion was premature because the court had made clear that Plaintiff was entitled to discovery on the veil-piercing and successor-in-interest issues.[95]

For well over a year, the court has worked to balance the competing interests of a speedy referral to arbitration and the inclusion of all proper parties.   Certainly, the agreement of Plaintiff and Defendant Cliveden that their disputes are arbitrable favored speedy referral.   However, by the time that agreement was reached, Plaintiff had made allegations suggesting that other entities were also proper parties to arbitration.   Defendant Cliveden's suggested resolution at the time, that Plaintiff's allegations of alter ego should await the outcome of arbitration, was not just under the circumstances of this case.   Moreover, the entire case could not have been dismissed in favor of arbitration

---

[94]     Doc. 75, Pl.'s Resp. to Def. Cliveden's Mot. to Compel Arbitration & to Dismiss Proceedings p. 1 (emphasis omitted).

[95]     See id. p. 2 (citing Doc. 53, Order Dated Aug. 6, 2013 p. 11 as indicating that the court would allow discovery in order to determine which entities could be added and compelled to arbitration if the parties could not reach an agreement as to the proper parties to arbitration).

because CPSA remained a party.   CPSA had contested the court's personal jurisdiction but had not moved for dismissal.

The court determined that Plaintiff was entitled to discovery on Defendant Cliveden's corporate relationship with various parent and affiliate entities with the purpose of ascertaining whether any were also proper parties to arbitration.   Discovery disputes and Defendant Cliveden's recalcitrance in responding to discovery requests and complying with court orders delayed the process.

As reflected in the court's recent order allowing amendment, Plaintiff presented sufficient evidence of alter ego[96] to warrant adding six of Defendant Cliveden's corporate relatives as defendants.   Unfortunately, time will continue to pass as Plaintiff attempts service on the newly added defendants and those who are successfully served are afforded the opportunity to challenge this court's jurisdiction and combat Plaintiff's successor-in-interest and veil-piercing allegations.   Despite the passage of time prior to the initiation of arbitration, this case should not be dismissed until the parties litigate all of the issues that inform the court's decision on which entities should be compelled to arbitration.

## V.   Conclusion

---

[96]     The court did not find it necessary in its order on motion for leave to amend to address Plaintiff's arguments regarding successor in interest and other veil-piercing theories, although they will be in issue when the court determines whether any nonsignatory should be compelled to arbitration.

Based on the foregoing, the court **RECOMMENDS** that Defendant Cliveden's motion to dismiss be **DENIED AS MOOT**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72 and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this <u>29th</u> day of August, 2014.


U.S. MAGISTRATE JUDGE