United States District Court
Southern District of Texas

**ENTERED**

June 23, 2017

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARLTON ENERGY GROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-95 |
| | § | |
| CLIVEDEN PETROLEUM COMPANY | § | |
| LIMITED, et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] are Non-Signatory Defendants'[2] Suggestion of Mootness and Motion to Stay Pending Completion of Arbitration (Doc. 301) and Carlton Energy Group, LLC's ("Carlton" or "Plaintiff") Motion to Strike New Arguments Offered in Non-Signatory Defendants' Reply Brief (Doc. 316).

In addition to these motions, the court has considered: (1) Plaintiff's Response to Non-Signatory Defendants' Suggestion of Mootness and Motion to Stay Pending Completion of Arbitration (Doc. 306); (2) Non-Signatory Defendants' Reply in Support of Suggestion of Mootness and Motion to Stay Pending Completion of Arbitration (Doc. 309); (3) Order Dated April 6, 2017 (Doc. 310); (4)

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 31, Ord. Dated Apr. 18, 2013.

[2] "Non-Signatory Defendants" refers to PetroChina Company Limited, China National Oil and Gas Exploration and Development Corporation, China Petroleum Exploration & Development Company Limited, China National Oil and Gas Exploration and Development Corporation International Holding Ltd., CNPC International (Chad) Ltd., and CNPC International (Chad) Co. Ltd.

Stipulation by Non-Signatory Defendants Regarding Arbitration of Plaintiff's Claims Against the Non-Signatory Defendants (Doc. 312); (5) Plaintiff's Response to Stipulation by Non-Signatory Defendants Regarding Arbitration (Doc. 314); (6) Non-Signatory Defendants' Reply to Plaintiff's Response to Court-Ordered Stipulation (Doc. 315); and (7) Non-Signatory Defendants' Response to Plaintiff's Motion to Strike (Doc. 317).

For the reasons explained below, the court **RECOMMENDS** that Non-Signatory Defendants' Suggestion of Mootness and Motion to Stay Pending Completion of Arbitration be **GRANTED**. Plaintiff's Motion to Strike New Arguments Offered in Non-Signatory Defendants' Reply Brief is **DENIED**.

## I.  Case Background

In 2000, Carlton and Cliveden Petroleum Company Limited ("Cliveden") entered an agreement ("Assignment Agreement") assigning Cliveden all of Carlton's ten percent working interest in a Convention established among the Republic of Chad, Trinity Energy Resources, Incorporated, Oriental Energy Resources, Limited, and Carlton, which covered oil exploration and development in three areas of Chad in exchange for Cliveden's agreement to pay Carlton ten percent of Cliveden's distributable net profits.[3]  The

---

[3]    See Doc. 54, Mem. & Recom. Dated Aug. 6, 2013 p. 2 (citing Doc. 1-1, Ex. 1 to Notice of Removal, Pl.'s 1st Am. Pet. to Enforce the Binding Arbitration Clause p. 3; Doc. 1-1, Ex. 1 to Notice of Removal, Pl.'s 1st Am. Pet. to Enforce the Binding Arbitration Clause, Ex. A, Assignment Agreement p. 1).

2

Assignment Agreement contained an arbitration provision that stated, in part, "[I]n this Agreement, in the event of any dispute between the parties whatsoever arising under this Agreement, the parties agree to submit such dispute to binding arbitration, to be held in Harris County, Texas."[4]  When a dispute arose between Carlton and Cliveden, disagreements over the application of the arbitration provision gave rise to this litigation.[5]

On May 11, 2012, Plaintiff filed its original petition in state court, seeking only to enforce the Assignment Agreement's arbitration provision against Cliveden.[6]  Cliveden removed the case in January 2013.[7]  In March 2013, Plaintiff sought leave to amend.[8]  Plaintiff's proposed amendment named additional defendants, added multiple causes of action, and omitted any request that the case be referred to arbitration.[9]

While arguing in favor of Plaintiff's motion for leave to amend, Plaintiff's counsel twice indicated that Plaintiff would be receptive to arbitration if Cliveden and the additional parties

---

[4]    Doc. 1-1, Ex. 1 to Notice of Removal, Pl.'s 1st Am. Pet. to Enforce the Binding Arbitration Clause, Ex. A, Assignment Agreement p. 3.

[5]    See Doc. 54, Mem. & Recom. Dated Aug. 6, 2013 pp. 3-4.

[6]    See Doc. 1-2, Ex. 2 to Notice of Removal, Pl.'s Orig. Pet. to Enforce the Binding Arbitration Clause.

[7]    See Doc. 1, Notice of Removal.

[8]    See Doc. 26, Pl.'s Mot. for Leave to File Am. Compl.

[9]    See Doc. 26-1, Pl.'s 2d Am. Compl.

agreed to arbitrate the dispute.[10]   Plaintiff's counsel also admitted that a showing of alter ego sufficient to justify compelling the additional parties to arbitration was "not a full alter ego showing" and that "the merits of that all go to the arbitrator."[11]   He further acknowledged that the court's responsibility was to decide only whether the additional parties should be compelled to arbitration.[12]

The court found that Plaintiff's proposed amended complaint essentially created "an entirely new lawsuit" by adding new parties and claims while abandoning its original motion to compel arbitration.[13]   The order, which was dated August 6, 2013, stated:

> That said, the court is still faced with an important issue.   Plaintiff's proposed second amended complaint raises a colorable claim regarding whether any of the additional defendants must go to arbitration as a successor in interest subject to the terms of the Assignment Agreement or an alter ego of [Cliveden].   That is an issue within the bounds of the present lawsuit. The court is tasked with the determination whether nonsignatories should be compelled to arbitration.   See Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009)(indicating that a nonsignatory may be compelled to arbitrate when traditional principles of state law allow the contract to be enforce[d] against nonparties to the contract); AT&T Techs., Inc. v. Commc'ns Worker of Am., 475 U.S. 643, 649 (1986)(stating that "the question of arbitrability . . . is undeniably an issue for judicial

---

[10]   See Doc. 42, Tr. of Scheduling Conference Dated May 24, 2013 pp. 10, 25.

[11]   Id. p. 27.

[12]   Id.

[13]   Doc. 53, Ord. Dated Aug. 6, 2013 p. 9.

determination").[14]

The court allowed the parties an opportunity to reach a consensus on the proper parties to the arbitration and stated that, should they fail to agree, the court would allow Plaintiff discovery from Cliveden "regarding its corporate relationship with the proposed defendants, its financial status, and the disposition of its corporate assets.[15]

Also on August 6, 2013, the undersigned recommended that Cliveden's first motion to dismiss be denied as moot because Plaintiff and Cliveden had agreed that the Assignment Agreement required that they arbitrate their dispute and agreed to the terms of arbitration.[16]   In the Memorandum and Recommendation, the undersigned agreed with the parties that the Assignment Agreement required Plaintiff and Cliveden to engage in binding arbitration for any dispute arising under the contract.[17]   The parties filed no objections to the Memorandum and Recommendation, and it was adopted.[18]

Plaintiff and Cliveden were unable to agree on which other parties should also participate in the arbitration and began

---

[14]    Id. p. 10.

[15]    Id. pp. 10-11.

[16]    See Doc. 54, Mem. & Recom. Dated Aug. 6, 2013 pp. 12-13.

[17]    See id. p. 12.

[18]    See Doc. 55, Ord. Adopting Mem. & Recom. Dated Aug. 22, 2013.

limited discovery on the issue.[19]  During this time, Cliveden filed another motion to dismiss, requesting that the court compel Plaintiff and Cliveden to arbitration.[20]

In February 2014, the undersigned determined that Plaintiff had sufficiently developed the foundation for its alter-ego claim to "get [its] toe over the line as far as an amended complaint."[21] The court allowed additional discovery on eight delineated topics and told Plaintiff that it needed to file a motion for leave to amend its complaint.[22]  Cliveden objected to the discovery order, and, on April 4, 2014, the objections were overruled.[23]  In that order, the court stated that the discovery was "relevant to an issue properly pending before this court, that is, whether any other entity should be compelled to arbitration" under any state law theory.[24]

The discovery disputes continued.[25]  On June 10, 2014, the

---

[19]   See Doc. 62, Tr. of Hr'g Dated December 13, 2013 pp. 3-5; Doc. 67, Cliveden's Mot. to Quash Subpoena of Gaffney, Cline & Associates, Inc.; Doc. 68, Cliveden's Mot. to Compel Arbitration & to Dismiss Proceedings pp. 5-8; Doc. 70, Pl.'s Mot. to Compel Prod. of Docs.

[20]   See Doc. 68, Cliveden's Mot. to Compel Arbitration & to Dismiss Proceedings.

[21]   Doc. 83, Tr. of Hr'g Dated Feb. 13, 2014 pp. 10-11.

[22]   See id. pp. 11, 30.

[23]   See Doc. 85, Cliveden's Objs. to Ord. Compelling Prod. of Certain Docs.; Doc. 92, Ord. Dated Apr. 4, 2014.

[24]   Doc. 92, Ord. Dated Apr. 4, 2014 p. 6.

[25]   See Doc. 94, Cliveden's Mot. for Protection & Mot. to Modify the Ord. of Apr. 4, 2014; Doc. 98, Pl.'s Mot. to Compel Prod.; Doc. 99, Pl.'s Resp. to Cliveden's Mot. for Protection & Mot. to Modify the Ord. of Apr. 4, 2014; Doc.

court held a discovery hearing and entered an oral order requiring Cliveden to produce certain documents.[26]   The court ordered Plaintiff to file its motion for leave to amend within two weeks of the production of documents.[27]  On July 10, 2014, Plaintiff filed the motion for leave to amend.[28]   The stated purpose of the amendment was "to add certain parent and affiliate companies of Cliveden . . . as defendants and compel them to arbitrate along with Cliveden."[29]  Plaintiff represented that it did not seek to add claims on the merits.[30]  Although no response was filed, the court addressed the merits of the motion rather than deeming it unopposed pursuant to the Local Rules.[31]  The undersigned determined that the discovered facts "g[a]ve rise to the suggestion of alter ego" and, on August 26, 2014, granted leave to amend.[32]

The resulting amended complaint added Non-Signatory Defendants and included only the one, original count requesting a court order

100, Min. Entry Dated May 23, 2014; Doc. 105, Cliveden's Resp. to Pl.'s Mot. to Compel Prod.; Doc. 115, Cliveden's Reply in Support of Mot. for Protection & Mot. to Modify the Ord. of Apr. 4, 2014; Doc. 118, Cliveden's Suppl. Resp. to Pl.'s Mot. to Compel Prod.; Doc. 121, Pl.'s Surreply to Cliveden's Mot. for Protection & Mot. to Modify the Ord. of Apr. 4, 2014; Doc. 122, Pl.'s Suppl. Resp. to Cliveden's Mot. for Protection.

[26]   See Doc. 124, Oral Ord. Dated June 10, 2014.

[27]   See id.

[28]   See Doc. 132, Pl.'s Mot. for Leave to File Am. Compl.

[29]   Id. p. 1.

[30]   See id.

[31]   See Doc. 133, Sealed Ord. Dated Aug. 26, 2014 p. 1 & n.4.

[32]   Id. p. 7.

compelling arbitration.[33]  More specifically, the pleading stated:

> 86.  Carlton respectfully requests that the Court cite all Defendants to appear and answer, refer this dispute to arbitration in Harris County, Texas, and stay the lawsuit pending resolution of the arbitration.  The Court should do so for the following reasons:
>
> a.  On February 15, 2000, Carlton and Cliveden entered into the Assignment Agreement.  The Assignment Agreement contains a provision that requires any dispute arising under the Arbitration Agreement to be submitted to binding arbitration in Harris County, Texas.  The Assignment Agreement binds Carlton's and Cliveden's successors and assigns. This provision should be enforced.
>
> b.  In addition, because the facts demonstrate that Cliveden's corporate veil has been ignored and should be pierced, the Successor Defendants are bound by the arbitration provision in the Assignment Agreement.  The Fifth Circuit has held that a district court can compel a non-signatory to an arbitration agreement to arbitration by piercing the corporate veil.
>
> c.  In the alternative, the Successor Defendants are successors or assigns of Cliveden under the Assignment Agreement and thus the arbitration provision in the Assignment Agreement binds them to the arbitration.[34]

Three days later, the undersigned recommended that Cliveden's second motion to dismiss be denied, finding that arbitration could not proceed with Cliveden alone at that time because the amended pleading raised allegations that Non-Signatory Defendants were alter egos and/or successors in interest subject to the arbitration

---

[33]  See Doc. 134, Pl.'s 2ᵈ Am. Compl.

[34]  Id. p. 33.

agreement.[35]   The court noted that, for well over a year, the court
had attempted "to balance the competing interests of a speedy
referral to arbitration and the inclusion of all proper parties."[36]
The  Memorandum  and  Recommendation  further  concluded  that,
"[d]espite  the  passage  of  time  prior  to  the  initiation  of
arbitration, this case should not be dismissed until the parties
litigate all of the issues that inform the court's decision on
which entities should be compelled to arbitration."[37]

        At that point, Plaintiff took steps to serve the Non-Signatory
Defendants.[38]   Between September 3, 2014, when the court issued
summons to the Non-Signatory Defendants, and April 7, 2015, when
the court ruled on multiple discovery motions, the parties engaged
in voluminous motion practice, including the filing of a third
motion to dismiss by Cliveden and motions to dismiss asserting lack
of personal jurisdiction and motions to stay discovery filed by the
four served Non-Signatory Defendants (PetroChina Company Limited,
China National Oil and Gas Exploration and Development Corporation
International Holding Ltd., CNPC International (Chad) Ltd., and

---

        [35]      Doc. 138, Mem. & Recom. Dated Aug. 29, 2014 p. 21; see also Doc. 142,
Ord. Adopting Mem. & Recom. Dated Sept. 16, 2014.

        [36]      Doc. 138, Mem. & Recom. Dated Aug. 29, 2014 p. 20.

        [37]      Id. p. 21.

        [38]      See Doc. 139, Summons in a Civil Action.

CNPC International (Chad) Co. Ltd.).[39] During that time, the court granted numerous extensions of deadlines.[40]

The order dated April 7, 2015, granted in part and denied in part the motions to stay discovery filed by the four served Non-Signatory Defendants.[41] The court also granted in part and denied in part Plaintiff's motion seeking discovery to determine whether the court could exercise personal jurisdiction over Non-Signatory Defendants as alter egos of Cliveden.[42] Noting that a court need not allow all of the jurisdictional discovery sought by a plaintiff, the court listed nine issues on which Plaintiff was allowed discovery and stayed discovery on all other issues.[43] The court also explained that the standard for determining whether to impute jurisdictional contacts under an alter-ego theory differed from the standard applicable to alter-ego determinations in other

---

[39] *See, e.g.,* Doc. 143, Cliveden's Mot. to Dismiss Pl.'s 2$^d$ Am. Compl.; Doc. 162, CNPC Int'l (Chad) Co. Ltd.'s Mot. to Dismiss Pl.'s 2$^d$ Am. Compl.; Doc. 163, PetroChina Co. Ltd.'s Mot. to Dismiss Pl.'s 2$^d$ Am. Compl.; Doc. 164, PetroChina Co. Ltd.'s Mot. to Stay Disc. Pending Resolution of Mot. to Dismiss; Doc. 165, CNPC Int'l (Chad) Co. Ltd.'s Mot. to Stay Disc. Pending Resolution of Mot. to Dismiss; Doc. 167, CNPC Int'l (Chad) Ltd.'s Mot. to Dismiss Pl.'s 2$^d$ Am. Compl.; Doc. 172, China Nat'l Oil & Gas Expl. & Dev. Corp. Int'l Holding Ltd.'s Mot. to Dismiss Pl.'s 2$^d$ Am. Compl.; Doc. 177, China Nat'l Oil & Gas Expl. & Dev. Corp. Int'l Holding Ltd.'s Joinder in Mot. to Stay Disc.; Doc. 178, CNPC Int'l (Chad) Ltd.'s Joinder in Mot. to Stay Disc.

[40] *See, e.g.,* Doc. 141, Ord. Dated Sept. 9, 2014; Doc. 149, Ord. Dated Oct. 14, 2014; Doc. 150, Ord. Dated Oct. 14, 2014; Doc. 151, Ord. Dated Oct. 15, 2014; Doc. 157, Ord. Dated Oct. 21, 2014; Doc. 158, Ord. Dated Oct. 21, 2014; Doc. 161, Ord. Dated Nov. 3, 2014; Doc. 173, Ord. Dated Nov. 25, 2014; Doc. 174, Order Dated Nov. 25, 2014; Doc. 175, Ord. Dated Nov. 25, 2014; Doc. 176, Ord. Dated Nov. 25, 2014.

[41] *See* Doc. 206, Sealed Ord. Dated Apr. 7, 2015.

[42] *See id.*

[43] *See id.* pp. 19, 27-28.

situations, such as compelling arbitration.[44]

On the same day that the order was entered, the two later-served Non-Signatory Defendants (China National Oil and Gas Exploration and Development Corporation and China Petroleum Exploration & Development Company Limited) filed motions to dismiss asserting lack of personal jurisdiction and motions to stay discovery.[45]   Shortly thereafter, Non-Signatory Defendants PetroChina Company Limited, China National Oil and Gas Exploration and Development Corporation International Holding Ltd., CNPC International (Chad) Ltd., and CNPC International (Chad) Co. Ltd. filed objections to the April 2015 discovery order, which were overruled on May 29, 2015.[46]

On July 30, 2015, the court held a status conference on the progress of jurisdictional discovery and addressed complications related to acquiring documents from Chinese companies as well as disputes concerning the scope of discovery.[47]   In response to Non-Signatory Defendants' complaints that the scope of the jurisdictional discovery was greater than would be allowed in

---

[44]   Id. p. 20 & n.80.

[45]   See Doc. 207, China Nat'l Oil & Gas Expl. & Dev. Corp.'s Mot. to Dismiss Pl.'s 2d Am. Compl.; Doc. 208, China Petroleum Expl. & Dev. Co. Ltd.'s Mot. to Dismiss Pl.'s 2d Am. Compl.; Doc. 209, China Nat'l Oil & Gas Expl. & Dev. Corp.'s Joinder in Mot. to Stay Disc.; Doc. 210, China Petroleum Expl. & Dev. Co. Ltd.'s Joinder in Mot. to Stay Disc.

[46]   See Doc. 211, Non-Signatory Defs.' Objs. to & Mot. to Set Aside the Sealed Ord. & Grant a Stay Regarding Disc.

[47]   See Doc. 227, Min. Entry Dated July 30, 2015; Doc. 229, Tr. of Hr'g Dated July 30, 2015.

arbitration, the court stated, "If [Non-Signatory Defendants] don't like the extent of the discovery and they think it's more favorable in arbitration, then they need to get the arbitration."[48]

On August 17, 2015, the court recommended that the motions to dismiss filed by Non-Signatory Defendants PetroChina Company Limited, China National Oil and Gas Exploration and Development Corporation International Holding Ltd., CNPC International (Chad) Ltd., and CNPC International (Chad) Co. Ltd. be denied with leave to refile after the completion of jurisdictional discovery.[49]

On August 27, 2015, the undersigned entered a Memorandum and Recommendation, which was later adopted, recommending denial of Cliveden's third motion to dismiss.[50]   The court agreed with Plaintiff that the issue was not whether Cliveden and Plaintiff must arbitrate but whether they must do so alone, reaffirming the court's position that the "case should not be dismissed until the parties litigate all of the issues that inform the court's decision on which entities should be compelled to arbitration."[51]   As explained, Cliveden's willingness to arbitrate was not enough as

---

[48]     Doc. 229, Tr. of Hr'g Dated July 30, 2015 p. 13.

[49]     See Doc. 233, Mem. & Recom. Dated Aug. 17, 2015; Doc. 238, Ord. Adopting Mem. & Recom. Dated Sept. 1, 2015.

[50]     See Doc. 235, Mem. & Recom. Dated Aug. 17, 2015; Doc. 244, Ord. Adopting Mem. & Recom. Dated Sept. 15, 2015.

[51]     Doc. 235, Mem. & Recom. Dated Aug. 17, 2015 p. 8 (quoting Doc. 138, Mem. & Recom. Dated Aug. 29, 2014 p. 21).

long as its alleged alter egos refused to arbitrate.[52]  The court identified another point of contention yet to be resolved concerning the appointment of arbitrator(s).[53]

Jurisdictional discovery continued with a moderate amount of required court intervention.[54]  During this time, the undersigned recommended denying the motions to dismiss and motions to stay discovery filed by Non-Signatory Defendants China National Oil and Gas Exploration and Development Corporation and China Petroleum Exploration & Development Company Limited, and the recommendation was adopted.[55]  Also while discovery was ongoing, Cliveden and Non-Signatory Defendants filed answers to Plaintiff's Second Amended Complaint.[56]

In late 2016, the parties submitted status reports to update the court on the progress of jurisdictional discovery over the

---

[52]   Id. p. 9.

[53]   See id.

[54]   See, e.g., Doc. 239, Status Report Dated Sept. 8, 2015; Doc. 240, Jt. Agreed Mot. for Entry of Am. Protective Ord.; Doc. 258, Jt. Stipulation; Doc. 259, Ord. on Jt. Stipulation; Doc. 271, Status Report Dated Oct. 3, 2016.

[55]   See Doc. 260, Mem. & Recom. Dated Jan. 28, 2016; Doc. 269, Ord. Adopting Mem. & Recom. Dated Feb. 19, 2016.

[56]   See Doc. 262, China Nat'l Oil & Gas Expl. & Dev. Corp.'s Orig. Ans. to Pl.'s 2$^d$ Am. Compl.; Doc. 263, China Nat'l Oil & Gas Expl. & Dev. Corp. Int'l Holding Ltd.'s Orig. Ans. to Pl.'s 2$^d$ Am. Compl.; Doc. 264, China Petro. Expl. & Dev. Co. Ltd.'s Orig. Ans. to Pl.'s 2$^d$ Am. Compl.; Doc. 265, CNPC Int'l (Chad) Ltd.'s Orig. Ans. to Pl.'s 2$^d$ Am. Compl.; Doc. 266, PetroChina Co. Ltd.'s Orig. Ans. to Pl.'s 2$^d$ Am. Compl.; Doc. 267, CNPC Int'l (Chad) Co. Ltd.'s Orig. Ans. to Pl.'s 2$^d$ Am. Compl.; Doc. 268, Cliveden's Orig. Ans. to Pl.'s 2$^d$ Am. Compl.

prior year.[57]   Plaintiff requested "hard deadlines" for the completion of discovery and the determination of personal jurisdiction, while Non-Signatory Defendants requested a "formal stay" to allow for continued settlement negotiations.[58]   Plaintiff represented that it and Cliveden had begun "discussions aimed at resolving their dispute completely, or agreeing to an arbitration framework that would end the Court's need to decide whether any of the [Non-Signatory] Defendants are proper parties to an arbitration proceeding between Carlton and Cliveden."[59]

In October and November 2016, the court held status conferences.[60]   At the first status conference, Plaintiff stated that, in its view, the court's role is to determine "whether or not these other entities are liable, either . . . as successors or alter egos."[61]   Non-Signatory Defendants articulated an interest in resolving the case so that they no longer had "to fight about jurisdictional alter-ego issues, which could go on for years."[62]   Ultimately, the court set a deadline in November 2016 by which

---

[57]   See Doc. 271, Pl.'s Status Report Dated Oct. 3, 2016; Doc. 272, Non-Signatory Defs.' Status Report Dated Oct. 3, 2016.

[58]   Doc. 271, Pl.'s Status Report Dated Oct. 3, 2016 p. 2; Doc. 272, Non-Signatory Defs.' Status Report Dated Oct. 3, 2016 p. 1.

[59]   Doc. 271, Pl.'s Status Report Dated Oct. 3, 2016 pp. 1-2.

[60]   See Doc. 273, Min. Entry Ord. Dated Oct. 4, 2016; Doc. 276, Min. Entry Ord. Dated Nov. 18, 2016.

[61]   Doc. 277, Tr. of Hr'g Dated Oct. 4, 2016 pp. 10-11.

[62]   Id. pp. 19-20.

14

Plaintiff was to file a motion to compel outstanding jurisdictional discovery, if necessary.[63]   The court set a hearing on December 6, 2016, to address the discovery disputes.[64]  At a hearing on November 18, 2016, the court extended the deadline for Plaintiff to file a motion to compel and reset the hearing on that motion for February 6, 2017.[65]

On January 6, 2017, Plaintiff filed a motion to compel and to depose Non-Signatory Defendants' custodian of records.[66]   After receiving an extension of time, Non-Signatory Defendants filed a response on February 17, 2017.[67]  At a hearing on March 1, 2017, the court began addressing the discovery disputes but continued the hearing twice in order to address all of the requests as to each Non-Signatory Defendant.[68]  At the March 8, 2017, hearing, the court inquired whether Plaintiff had made a firm settlement demand and, upon hearing that it had not, strongly suggested that Plaintiff do

---

[63]   See id. p. 21.

[64]   See id. p. 22.

[65]   See Doc. 276, Min. Entry Dated Nov. 18, 2016.

[66]   See Doc. 281, Mot. to Compel Prod. & for Rule 30(b)(6) Dep. of Custodian of Recs.

[67]   See Doc. 283, Non-Signatory Defs.' Unopposed Mot. for Extension of Time to Respond to Mot. to Compel & to Reset Hr'g; Doc. 284, Ord. Dated Jan. 18, 2017; Doc. 286, Non-Signatory Defs.' Resp. to Pl.'s Mot. to Compel Prod. & for Rule 30(b)(6) Dep. of Custodian of Recs.

[68]   See Doc. 290, Min. Entry Ord. Dated Mar. 2, 2017; Doc. 292, Min. Entry Ord. Dated Mar. 8, 2017; Doc. 294, Tr. of Hr'g Dated Mar. 1, 2017 pp. 57-59; Doc. 295, Tr. of Hr'g Dated Mar. 8, 2017 pp. 178-79; Doc. 296, Notice of Setting Dated Mar. 10, 2017.

so.[69]  Plaintiff's counsel stated that Plaintiff was "more than happy to do so."[70]  Prior to the third hearing, Non-Signatory Defendants filed a motion to substitute counsel, which was granted.[71]

Five days later, Non-Signatory Defendants filed a suggestion of mootness and motion to stay, resulting in the cancellation of the third in the series of discovery hearings.[72]  In their motion, Non-Signatory Defendants represented that Plaintiff had informed Non-Signatory Defendants that it did not plan to make a settlement demand, prompting Non-Signatory Defendants to consent to the jurisdiction of the arbitrators.[73]  They argued that their agreement to arbitrate the dispute rendered this action moot and stripped this court of subject matter jurisdiction.[74]  Non-Signatory Defendants reported that the parties had agreed on the method for selecting arbitrators and had made their selections.[75]  Pending the completion of arbitration, Non-Signatory Defendants requested that

---

[69]     See Doc. 295, Tr. of Hr'g Dated Mar. 8, 2017 p. 180.

[70]     Id.

[71]     See Doc. 299, Non-Signatory Defs.' Unopposed Mot. to Withdraw & Substitute Counsel; Doc. 300, Ord. Dated Mar. 15, 2017.

[72]     See Doc. 301, Non-Signatory Defs.' Suggestion of Mootness & Mot. to Stay Pending Completion of Arbitration; Doc. 302, Notice of Cancellation.

[73]     See Doc. 301, Non-Signatory Defs.' Suggestion of Mootness & Mot. to Stay Pending Completion of Arbitration p. 2.

[74]     See id.

[75]     See id. p. 5.

the court stay this case.[76]

Before Plaintiff responded to Non-Signatory Defendants' motion, China National Oil and Gas Exploration and Development Corporation filed objections to the undersigned's order compelling the production of certain documents as read into the record at the March 8, 2017, hearing.[77] The objections were filed subject to Non-Signatory Defendants' Suggestion of Mootness and Motion to Stay Pending Completion of Arbitration.[78]

On March 27, 2017, Plaintiff filed a response to Non-Signatory Defendants' motion.[79] Plaintiff characterized its complaint, in pertinent part, as seeking to "establish this Court's jurisdiction to enforce the arbitration agreement and compel the non-signatories to arbitrate as alter egos, successors or agents of Cliveden."[80] Plaintiff argued that Non-Signatory Defendants' consent to arbitrate was a "limited undertaking" that "does not resolve the entire dispute between the parties."[81]

Plaintiff contended that the "important issue" identified by the court years ago was "whether any of the additional defendants

---

[76]   See id. p. 6.

[77]   See Doc. 305, China Nat'l Oil & Gas Expl. & Dev. Corp.'s Objs. to Ord. Compelling Prod. of Certain Jurisdictional Disc.

[78]   See id.

[79]   Doc. 306, Pl.'s Resp. to Defs.' Suggestion of Mootness & Mot. to Stay Pending Completion of Arbitration

[80]   Id. p. 1.

[81]   Id. pp. 1, 2.

must go to arbitration **as a successor in interest subject to the terms of the Assignment Agreement or an alter ego.**"[82] According to Plaintiff, resolution of the veil piercing and successors-in-interest issues was a "threshold determination."[83] Plaintiff also raised questions concerning whether and to what extent Non-Signatory Defendants are bound to the Assignment Agreement that includes the arbitration provision.[84] Finally, Plaintiff asserted that Non-Signatory Defendants' consent to arbitration was a ploy to avoid discovery obligations and judicial review.[85]

On April 3, 2017, Non-Signatory Defendants filed a reply, maintaining their position that their agreement to be bound by the arbitration provision satisfied all demands made in Plaintiff's live complaint.[86] On April 6, 2017, the court entered an order requiring Non-Signatory Defendants to file a document listing precisely that to which they were stipulating.[87] The order stated:

> If [Non-Signatory Defendants], at a minimum, stipulate that: (1) they are all proper parties to arbitration; (2) they all agree to submit to the jurisdiction of the arbitrator(s); and (3) they all agree to be bound by the

---

[82]    Id. p. 2 (quoting with added emphasis Doc. 53, Ord. Dated Aug. 6, 2013 p. 10).

[83]    Id.

[84]    See id. pp. 8-12.

[85]    See id. pp. 12-13.

[86]    See Doc. 309, Non-Signatory Defs.' Reply in Support of Suggestion of Mootness & Mot. to Stay Pending Completion of Arbitration.

[87]    See Doc. 310, Ord. Dated Apr. 6, 2017.

18

decisions of the arbitrator(s), the only issue remaining before this court will be resolved in full.[88]

The court continued Non-Signatory Defendants' Suggestion of Mootness and Motion to Stay Pending Completion of the Arbitration, stating that it would take it into consideration upon review of Non-Signatory Defendants' stipulation on consent to arbitration.[89] The court stated that, if Non-Signatory Defendants concede that they are proper parties to arbitration, "the court's work is done, and the question of alter ego, at least at this tribunal, is moot."[90]  No party objected to the undersigned's order.  On the same day, Plaintiff filed a response to the objections to the March 2017 order compelling jurisdictional discovery.[91]

On April 19, 2017, Non-Signatory Defendants filed a stipulation in which they agreed to "proceed to arbitration pursuant to the terms of the arbitration provision in the Assignment Agreement."[92]  Therein, they stipulated that: (1) they "are proper parties to the arbitration;" (2) they "each submit to the jurisdiction of the arbitrators to the same extent as the parties to the Assignment Agreement agreed to so submit pursuant to

---

[88]    *Id.* p. 3.

[89]    *Id.* pp. 3-4.

[90]    *Id.* pp. 2-3.

[91]    *See* Doc. 311, Pl.'s Resp. to China Nat'l Oil & Gas Expl. & Dev. Corp.'s Objs. to Ord. Compelling Prod. of Certain Jurisdictional Disc..

[92]    Doc. 312, Non-Signatory Defs.' Stipulation p. 1.

the terms of the arbitration provision in the Assignment Agreement;" and (3) they "each agree to be bound by the decisions of the arbitrators to the same extent as the parties to the Assignment Agreement agreed to be so bound pursuant to the terms of the arbitration provision in the Assignment Agreement."[93]

The only difference between the language of the court order and the language of the stipulation was the clarification that Non-Signatory Defendants intended to submit to arbitration and be bound to the same extent as the parties to the Assignment Agreement were bound by the arbitration provision.[94]   Non-Signatory Defendants explicitly refused to stipulate that any was an alter ego or a successor in interest to Cliveden or each other and reserved all rights and defenses to their liability for claims raised in arbitration.[95]

On April 25, 2017, Plaintiff responded to Non-Signatory Defendants' stipulation, stating, "[Plaintiff] made no agreement to arbitrate any disputes with the Non-Signatory Defendants, much less an agreement to arbitrate the issue of whether those defendants are bound by the Assignment Agreement in the first instance and, being bound, are 'proper parties' to arbitrate."[96]  Plaintiff argued that

---

[93]    Id. p. 2.

[94]    Compare id. with Doc. 310, Ord. Dated Apr. 6, 2017 p. 3.

[95]    Doc. 312, Non-Signatory Defs.' Stipulation p. 2 n.1.

[96]    Doc. 314, Pl.'s Resp. to Non-Signatory Defs.' Stipulation p. 1.

the court must decide whether Non-Signatory Defendants are bound by the Assignment Agreement itself, not just the arbitration provision.[97]  In pursuit of this argument, Plaintiff advocated that the arbitrators lack the authority to decide whether the Non-Signatory Defendants are bound by the Assignment Agreement as alter egos or successors in interest.[98]  Along the same lines, Plaintiff challenged Non-Signatory Defendants' refusal to concede that they were alter egos or successors in interest.[99]

On May 3, 2017, Non-Signatory Defendants replied to Plaintiff's response, arguing that Plaintiff's proposal of continuing in this court is "unquestionably prohibited" by the Federal Arbitration Act ("FAA").[100]  They pointed to Plaintiff's live complaint and argued that their stipulation fully grants Plaintiff's prayer for relief and resolves all issues before the court.[101]  They also argued that the theory of estoppel prohibited Plaintiff from opposing Non-Signatory Defendants' consent to arbitration.[102]  Non-Signatory Defendants further contended that the task of deciding whether they are bound by the Assignment Agreement

---

[97]   See id. pp. 3-6.

[98]   See id. p. 10.

[99]   See id. p. 1.

[100]   See Doc. 315, Non-Signatory Defs.' Reply p. 4.

[101]   See id.

[102]   See id. pp. 4-7.

rests with the arbitrators, not the court.[103]

Plaintiff responded with a motion to strike the portions of Non-Signatory Defendants' brief that addressed estoppel and the arbitrators' responsibility to decide whether they are bound by the terms of the Assignment Agreement because, Plaintiff argued, those were arguments that had not been raised previously.[104]   Non-Signatory Defendants opposed the motion, noting that Plaintiff's so-called response was filed in objection to Non-Signatory Defendants' stipulation and was not a response in the traditional sense.[105]   They noted that the arguments were in direct response to those raised by Plaintiff in its brief.[106]   Non-Signatory Defendants also pointed to prior times in the lawsuit when they raised the same issues.[107]

## II.   Applicable Law

When a court decides whether an arbitration provision warrants compelling the parties to arbitration, the court is guided by the FAA, which instructs the court to stay the action upon application of one of the parties until the arbitration is complete if the

---

[103]     See id. pp. 8-11.

[104]     See Doc. 316, Pl.'s Mot. to Strike New Arguments Offered in Non-Signatory Defs.' Reply Brief.

[105]     See Doc. 317, Non-Signatory Defs.' Resp. to Pl.'s Mot. to Strike pp. 1-2.

[106]     See id. p. 2.

[107]     See id. pp. 2-3.

court is "satisfied" that an action is subject to an enforceable arbitration provision. 9 U.S.C. § 3. The court's role is to apply a two-prong inquiry, determining, first, whether the parties agreed to arbitrate and, second, whether any federal statute or policy overrides that agreement. <u>Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.</u>, 588 F.3d 884, 886 (5th Cir. 2009). The first prong, which addresses arbitrability, is divided into two parts: (1) "whether a valid agreement to arbitrate exists," and (2) "whether the dispute falls within that agreement." <u>Id.</u> The court's role is confined to determining "whether the claim asserted is the type of claim the parties have agreed to arbitrate." <u>Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 4-2001 v. ExxonMobil Refining & Supply Co.</u>, 449 F.3d 616, 619 (5th Cir. 2006). The court is prohibited from examining the merits of the case in making this determination. <u>See</u> <u>id.</u>

### III.  Discussion

This case is and always has been an action to compel arbitration. When Plaintiff filed its original petition in state court, it asked the court to enforce the arbitration provision in the Assignment Agreement. While Plaintiff's motion for leave to amend was pending, Plaintiff's counsel affirmed in open court that Plaintiff would be amenable to proceed in arbitration if all of the proposed named defendants consented. When the court reviewed Plaintiff's first proposed amended pleading, the court

characterized it as creating "an entirely new lawsuit"[108] because the proposed pleading added defendants and causes of action while omitting entirely Plaintiff's request to enforce the arbitration provision. The court rejected Plaintiff's effort to morph the lawsuit from one seeking to enforce the arbitration provision to one addressing the merits of the underlying dispute.

The order directing the parties to consult each other in an effort to reach agreement on the proper parties to arbitration exemplifies the court's commitment to decide only that one issue. Had the parties reached agreement at that time, the court immediately would have referred the case to arbitration without engaging in any jurisdictional discovery. The situation is no different now.

After the parties' failure to agree, the court allowed amendment only when Plaintiff returned to its original goal of compelling arbitration. The court repeatedly stated that its only task was to determine which parties should be compelled to arbitration. In order to be in a position to determine which parties should be compelled to arbitration, the court first needed to determine whether it could exercise personal jurisdiction over the Non-Signatory Defendants. Plaintiff sought to impute Cliveden's contacts with Texas to Non-Signatory Defendants under the theory of alter ego. Thus, the court allowed discovery into

---

[108]   Doc. 53, Ord. Dated Aug. 6, 2013 p. 9.

24

the interrelatedness of Cliveden and Non-Signatory Defendants to determine whether, as Plaintiff argued, Non-Signatory Defendants were alter egos of Cliveden for purposes of personal jurisdiction.

As jurisdictional discovery progressed and disputes arose, Plaintiff became consumed with its pursuit of evidence of alter ego, losing sight of the purpose of the jurisdictional discovery, to wit, to determine whether the court could exercise jurisdiction over Non-Signatory Defendants in the first place. As the court explained, the exercise of personal jurisdiction was only the first step in determining the "important issue"[109] of which parties should be compelled to arbitration. This case did not reach the stage of determining whether Non-Signatory Defendants are bound by the arbitration agreement pursuant to state contract law. And Non-Signatory Defendants' consent to be bound by the arbitration agreement alleviated Plaintiff of that burden of proof.

Non-Signatory Defendants also resolved the preliminary jurisdictional issue by stipulating in this court that they are proper parties to the arbitration, that they submit to the jurisdiction of the arbitrators pursuant to the arbitration provision, and that they agree to be bound by the decisions of the arbitrators pursuant to the arbitration provision. Because the arbitration provision dictates arbitration in Harris County, Texas, Non-Signatory Defendants impliedly consent to jurisdiction of

---

[109]   Id. p. 10.

courts in the State of Texas. <u>See</u> <u>PaineWebber Inc. v. Chase</u>
<u>Manhattan Private Bank (Switzerland)</u>, 260 F.3d 453, 461 (5th Cir.
2001)("An agreement to arbitrate is one . . . 'legal arrangement'
by which a litigant may impliedly consent to personal
jurisdiction."). Non-Signatory Defendants' implied consent to the
jurisdiction of this court naturally extends to any post-
arbitration enforcement action as this action will be stayed
pending arbitration.

Plaintiff also lost sight of the limit on the court's
authority in deciding whether a case should be referred to
arbitration. Case law clearly limits the court's role to
determining whether the parties agreed to arbitrate the particular
type of claim alleged. <u>See</u> <u>Paper, Allied-Indus., Chem & Energy</u>
<u>Workers Int'l Union Local No. 4-2001</u>, 449 F.3d at 619. In this
case, the court, Plaintiff, and Cliveden all agreed that the
Plaintiff and Cliveden's dispute was subject to the arbitration
provision and, consequently, to binding arbitration. The only
issue was whether any other party was also bound by the arbitration
provision. To go beyond that determination would exceed this
court's authority. To address issues raised by Plaintiff recently,
such as whether Non-Signatory Defendants are bound by the
Assignment Agreement itself or whether they are liable as alter
egos or successors in interest under the terms of the Assignment
Agreement, is prohibited as those issues involve the merits of the

26

case.  Cf. id. (forbidding the court from examining the merits of the dispute).

The arbitrators, on the other hand, are able to address those issues.  The arbitration provision in the Assignment Agreement is very broad, covering "any dispute between the parties whatsoever arising under the Agreement."[110]   Nothing in the arbitration provision precludes the arbitrators from deciding the alter-ego and successors-in-interest issues.[111]  Cf. The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd., 523 F.3d 528, 536 (5th Cir. 2008)(explaining what a broad arbitration provision is and that the Fifth Circuit leaves to the arbitrator whether a dispute is within the arbitration agreement when that agreement is broad).

The only important issue before this court was whether any of the additional defendants must go to arbitration.  Plaintiff loses sight of the court's point in this regard by shifting focus from which parties must go to arbitration to the reasons that Plaintiff proffered in the live pleading for finding Non-Signatory Defendants bound by the arbitration agreement (alter ego and/or successors in interest).[112]   By consenting to arbitration, Non-Signatory

---

[110]    Doc. 1-1, Ex. 1 to Notice of Removal, Pl.'s 1st Am. Pet. to Enforce the Binding Arbitration Clause, Ex. A, Assignment Agreement p. 3.

[111]    See id.

[112]    See Doc. 134, Pl.'s 2d Am. Compl. p. 33 (requesting that the court refer this dispute and all defendants to arbitration in Harris County, Texas, for the following reasons: because Non-Signatory Defendants are alter egos of Cliveden and because successors and assigns are specifically bound by the Assignment Agreement).

Defendants resolved all of the issues that inform the court's decision regarding which entities should be compelled to arbitration. Their consents to arbitration also provided Plaintiff with everything requested in its live pleading.

The court has always recognized the importance of balancing "competing interests of a speedy referral to arbitration and the inclusion of all proper parties."[113]  For years, the pendulum favored the inclusion of all proper parties; however, based on the agreement of all parties to submit to arbitration,[114] the pendulum has swung toward the immediate referral to arbitration.

The court **RECOMMENDS** that Non-Signatory Defendants' Suggestion of Mootness and Motion to Stay Pending Completion of Arbitration be **GRANTED**. Plaintiff's Motion to Strike New Arguments Offered in Non-Signatory Defendants' Reply Brief is **DENIED**.  If this Memorandum and Recommendation is adopted, China National Oil and Gas Exploration and Development Corporation's objections to the undersigned's order compelling the production of certain documents, which was filed subject to the Non-Signatory Defendants' Suggestion of Mootness and Motion to Stay Pending Completion of Arbitration, will be **MOOT**.

---

[113]    Doc. 138, Mem. & Recom. Dated August 29, 2014 p. 20.

[114]    Plaintiff consented to arbitration by filing a complaint asking the court to compel Cliveden and Non-Signatory Defendants to arbitration. Plaintiff's remark that it did not consent to arbitrate any disputes with Non-Signatory Defendants is pure bunkum not deserving of the court's response.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 23rd day of June, 2017.

_____

U.S. MAGISTRATE JUDGE